CLESSON Y. CHIKASUYE, KEKOA D. KAAPU,
BEN F. KAITO, EUGENE F. KENNEDY,
GEORGE KOGA, HERMAN G. P. LEMKE,
YOSHIRO NAKAMURA AND MATSUO TAKABUKI
*v.* EILEEN K. LOTA, CLERK OF THE
CITY AND COUNTY OF HONOLULU.

No. 4788.

August 30, 1968.

Richardson, C.J., Marumoto, Abe, Levinson,
JJ., and Circuit Judge Fukushima,
Assigned by Reason of Vacancy.

OPINION OF THE COURT BY MARUMOTO, J.

This is a submission on agreed facts, under R.L.H. 1955, § 227-1, by eight of nine councilmen of the City and County of Honolulu, as plaintiffs, and the city and county clerk, as defendant, of questions in difference between them with regard to the validity of the apportionment of council seats, as set forth in the charter, and the duty of the clerk with reference to the conduct of the forthcoming election for councilmen.

The City and County of Honolulu, which we will hereafter refer to as the city, is a municipal corporation covering the entire island of Oahu. It operates under a charter enacted by the Territorial legislature in June 1959.

The charter vests the legislative powers of the city in a council of nine members elected every four years as follows: six from the city at large, one from District A, one from District B, and one from District C.

Districts A, B, and C are council districts created in suburban and rural areas of Oahu, and correspond respectively to the 8th, 9th, and 10th districts delineated in the State constitution for election of members of the State house of representatives.

The constitution has divided the island of Oahu into ten representative districts, numbered 8th through 17th. The charter has not created any council district in any of the areas embraced within representative districts 11th through 17th, which will hereafter be referred to as the Honolulu district.

The result of the operation of the charter provision is that voters in each of council districts A, B, and C vote for six councilmen at large and one district councilman, or seven councilmen in all, while voters in the Honolulu district vote only for six councilmen at large.

The charter was enacted five years before *Reynolds* v. *Sims,* 377 U.S. 533, and companion decisions of June 15, 1964,[1] in which the United States Supreme Court propounded the equal-population principle for apportionment of seats in state legislatures.

Inasmuch as *Reynolds* v. *Sims* cast a shadow of invalidity on the charter provision, the council submitted two amendatory provisions to the city voters at the November 8, 1966, general election.

Proposition No. 1 called for a council of nine members, all elected from the city at large.

Proposition No. 2 called for a council of eleven members, six to be elected from the city at large and one to be elected from

---

[1] *WMCA, Inc.* v. *Lomenzo,* 377 U.S. 633; *Maryland Committee* v. *Tawes,* 377 U.S. 656; *Davis* v. *Mann,* 377 U.S. 678; *Roman* v. *Sincock,* 377 U.S. 695; *Lucas* v. *Colorado General Assembly,* 377 U.S. 713.

each of five council districts to be created within the entire city, including the Honolulu district. As proposed, each of such council districts contained approximately an equal number of registered voters for the 1964 general election, the number of such voters in the largest district being 36,814 and in the smallest district being 35,470.

The council presumably based the apportionment in Proposition No. 2 on the number of registered voters, instead of gross population, in the light of the decision in *Burns* v. *Richardson*, 384 U.S. 73 (1966). In that case, the court sustained the validity of the apportionment of the legislature of this State on such basis because the evidence adduced at the trial showed that it "produced a distribution of legislators not substantially different from that which would have resulted from the use of a permissible population basis." 384 U.S. 73, 93.

Section 13-103 of the charter provides: "No amendment or revision of this charter shall be effective unless approved by a majority of the voters voting thereon." Neither Proposition No. 1 nor Proposition No. 2 received such voter approval.

Earlier this year, on April 8, the United States Supreme Court announced its decision in *Avery* v. *Midland County*, 390 U. S. 474, which extended the equal-population principle to apportionment of legislative bodies of local governmental units.

This, plus the fact that a city election will be held next November 5 and candidates for election to the council must file their nomination papers not later than September 4, triggered the instant submission.

Plaintiffs are residents, taxpayers, and voters of the city, in addition to being councilmen. Defendant is the official responsible for the conduct of city elections. She is duty bound to conduct the forthcoming election for councilmen as provided in the charter, unless this court orders otherwise.

Plaintiffs contend that the council, as presently constituted under the charter, is malapportioned; that inasmuch as the charter has not been amended and the malapportionment has not been otherwise corrected, this court should provide a temporary apportionment plan for the forthcoming election; and that de-

fendant should be ordered to conduct the councilmanic election in accordance with such plan.

Defendant, on the other hand, denies that the existing apportionment is invalid, and takes the position that even if the existing charter provision is invalid, this court should nevertheless desist from invoking any temporary plan because of the imminence of the forthcoming election and the advisability of avoiding a disruption of the election process which is already well under way.

The following are the available population and registered voter figures:

| | Population per 1960 Federal census | Registered voters 1960 | Registered voters 1964 | Registered voters 1966 |
|---|---|---|---|---|
| Honolulu district | 300,194 | 104,341 | 120,484 | 126,071 |
| District A | 62,281 | 18,369 | 27,023 | 30,044 |
| District B | 42,816 | 7,410 | 8,867 | 9,294 |
| District C | 95,118 | 17,003 | 23,683 | 27,642 |
| | 500,409 | 147,123 | 180,057 | 193,051 |

Percentage-wise, these figures come out as follows:

| | Percentage of population per 1960 Federal census | Percentage of registered voters 1960 | Percentage of registered voters 1964 | Percentage of registered voters 1966 |
|---|---|---|---|---|
| Honolulu District | 59.990 | 70.920 | 66.914 | 65.305 |
| District A | 12.446 | 12.486 | 15.007 | 15.563 |
| District B | 8.556 | 5.037 | 4.926 | 4.814 |
| District C | 19.008 | 11.557 | 13.153 | 14.318 |
| | 100.000 | 100.000 | 100.000 | 100.000 |

In addition to the above mentioned figures, the parties have presented a breakdown of the 1966 registered voter figures by precincts. No population figures subsequent to the 1960 Federal

census figures will be available until the next decennial Federal census is taken in 1970.

The parties are properly before this court, and they have submitted a justiciable controversy.

The facts agreed upon are sparse and fragmentary. However, they are sufficient for a holding that the charter provision for apportionment of council seats violates the equal-population principle. That principle is stated in *Reynolds* v. *Sims, supra* at 579, as follows:

> "Whatever the means of accomplishment, the overriding objective must be substantial equality of population among the various districts, so that the vote of any citizen is approximately equal in weight to that of any other citizen in the State."

The principle may not be watered down even by a majority vote of the electorate. In *Lucas* v. *Colorado General Assembly,* 377 U.S. 713, 736, the court stated:

> "An individual's constitutionally protected right to cast an equally weighted vote cannot be denied even by a vote of a majority of a State's electorate, if the apportionment scheme adopted by the voters fails to measure up to the requirements of the Equal Protection Clause."

Here, we need not resort to any of the statistical methods used by the courts to measure voter inequality. The very fact that voters in each of council districts A, B, and C, containing 12.446%, 8.556%, and 19.008% of the city population, vote for one more councilman than voters of the Honolulu district, containing 59.990% of such population, is proof enough that each vote in the council districts outweighs each vote in the Honolulu district to an extent considered to be invidious under the applicable decisions of the United States Supreme Court.

Although we thus hold that the existing apportionment of council seats is constitutionally invalid, we will not formulate any substitute or stop-gap plan at this time, and will permit election of councilmen at the forthcoming election pursuant to

the apportionment provided in 'the charter. But the term of each councilman so elected will 'be limited 'to two years.

Our decision in this regard is based on the reasons stated below.

Apportionment of seats in legislative bodies is not a simple matter, to be accomplished by mathematical calculations only. It is involved and time-consuming, if it is to be done correctly, as witness the deliberations on this subject in the State constitutional convention now in progress. Here, if we are to formulate a temporary plan, we have nothing to go by except mere numbers. Beyond showing the existence of malapportionment, there is very little in the submission which makes those numbers meaningful.

Furthermore, correction of malapportionment is primarily a political function. Courts step into this field, characterized by Mr. Justice Frankfurter in *Colegrove* v. *Green*, 328 U.S. 549, 556 (1946), as a "political thicket," only when the political arm of government refuses or fails to provide the necessary remedy.

It is stated in *Reynolds* v. *Sims, supra* at 586, that "legislative reapportionment is primarily a matter for legislative consideration and determination, and * * * judicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requirements in a timely fashion after having had an adequate opportunity to do so."

The record here shows that as early as November 8, 1966, the council made an effort to remedy a situation which it then considered to be of doubtful validity, by submitting its Proposition No. 1 and Proposition No. 2 for voter approval. The effort met voter resistance.

Voter reaction might have been different if there were a definite decision requiring local legislative bodies to comport to the equal-population principle. But there was no such decision at that time.

Even as late as May 22, 1967, more than six months after the submission of the council propositions for voter approval, the United States Supreme Court was circumspect as to the application of *Reynolds* v. *Sims* to local governmental units. On that

day, it decided *Sailors* v. *Board of Education,* 387 U.S. 105, and *Dusch* v. *Davis,* 387 U.S. 112. In *Sailors,* it "reserved the question whether 'the apportionment of municipal or county legislative agencies is governed 'by *Reynolds* v. *Sims.*" In *Dusch,* it assumed only *arguendo* that *Reynolds* v. *Sims* applied to such apportionment.

Under Article XIII, Section 13-101, of the charter, an amendment thereto may be initiated in one of two ways, namely, 'by resolution of the council, or by petition signed by qualified voters equal in number to at least ten per cent of the entire vote cast for mayor in the last preceding mayoralty election. Regardless of the method of initiation, an amendatory proposition does not become effective as an amendment until approved by the electorate at a general election. The forthcoming general election is the first general election to be held after *Avery* v. *Midland County.* Thus, even if amendatory procedure were initiated, under either method, immediately after that decision, still the amendment would not have been effective for the forthcoming election.

We cannot say that the appropriate arm of the municipal government responsible for taking corrective measure has had adequate opportunity to correct the existing malapportionment in a timely fashion.

We limit the term of each councilman elected at the forthcoming election to two years because, once an apportionment scheme is found to be constitutionally invalid, such invalidity should not be permitted to continue beyond a period reasonably necessary to make the required correction.

Unless the council rushes headlong into providing an amendment, no proposition can be placed before the electorate at the forthcoming general election. We do not expect the council to take precipitate action. In a matter as important as this, the result should be arrived at upon due deliberation of all relevant factors. If the necessary amendatory proposition is not submitted to the electorate at the forthcoming general election and if the amendment is to be effective for the councilmanic election to be held two years hence, there must be a special charter election.

The existing charter does not provide for such election. However, this court has authority to order such election, and stands ready to enter such order, to assure the constitutional right of every citizen of this city to an equally weighted vote at the earliest possible date after adequate opportunity has been accorded to remedy the malapportionment.

It may be stated that under the existing local government article of the constitution, as construed by this court in *Fasi* v. *City and County of Honolulu,* 50 Haw. 276, 439 P. 2d 206 (1968), there is an additional remedy in that the legislature may amend the charter at any time. The action of the legislature in this regard would not be subject to voter approval and no special charter election would be necessary. However, the availability of this method is contingent upon the existing constitutional provision remaining unchanged at the time of the convening of the next legislature.

We retain jurisdiction over this matter and require the parties to report to this court, not later than September 1, 1969, regarding the apportionment situation at that time, and this court will enter an appropriate order in the light of the report. In the interim, the parties may present reports on any proposed plan for appropriate court action.

In arriving at the foregoing decision, due consideration has been given to arguments presented on behalf of the intervenor and amicus curiae.

*Hiromu Suzawa,* Deputy Corporation Counsel (*Stanley Ling,* Corporation Counsel, and *T. Bruce Honda,* Deputy Corporation Counsel, with him on the brief), for plaintiffs.

*Charles M. Tonaki* for defendant.

*R. G. Dodge* for Mary S. George, amicus curiae.

*Jack H. Mizuha* for Toraki Matsumoto, intervenor-plaintiff.