## DUSCH ᴇᴛ ᴀʟ. *v.* DAVIS ᴇᴛ ᴀʟ.

No. 724.  Argued April 17–18, 1967.—Decided May 22, 1967.

*Harry Frazier III* argued the cause for appellants. With him on the briefs was *Archibald G. Robertson.*

*Henry E. Howell, Jr.,* argued the cause and filed a brief for appellees.

*Francis X. Beytagh, Jr.,* argued the cause *pro hac vice* for the United States, as *amicus curiae,* urging affirmance.  With him on the brief were *Solicitor General*

*Marshall, Assistant Attorney General Doar* and *Bruce J. Terris.*

Briefs of *amici curiae* were filed by *Louis J. Lefkowitz,* Attorney General, *pro se,* and *Daniel M. Cohen, Robert W. Imrie* and *George D. Zuckerman,* Assistant Attorneys General, for the Attorney General of the State of New York, and by *Morris H. Schneider* and *Seymour S. Ross* for the County of Nassau.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

In 1963 the City of Virginia Beach, Virginia, consolidated with adjoining Princess Anne County, which was both rural and urban; and a borough form of government was adopted. There are seven boroughs, one corresponding to the boundaries of the former city and six corresponding to the boundaries of the six magisterial districts. The consolidation plan was effected pursuant to Virginia law [1] and the charter embodied in the plan was approved by the legislature.[2]

Three boroughs—Bayside, Kempsville, and Lynnhaven—are primarily urban. Three—Blackwater, Princess Anne, and Pungo—are primarily rural. The borough of Virginia Beach, centering around its famous ocean beach and bay, is primarily tourist.

Electors of five boroughs, having exhausted attempts to obtain relief in the state courts,[3] instituted this suit against local and state officials claiming that the consolidation plan in its distribution of voting rights violated the principle of *Reynolds* v. *Sims,* 377 U. S. 533, and

---

[1] Va. Code 1950, Tit. 15, Art. 4, c. 9 (1956 Repl. Vol.).

[2] Va. Acts 1962, c. 147. The consolidation plan was an interim one, the idea being that another system would be initiated not sooner than 1968 and not later than 1971.

[3] *Davis* v. *Dusch,* 205 Va. 676, 139 S. E. 2d 25.

asking for the convening of a three-judge court. The three-judge court held that its jurisdiction had not been established because the issue was local in character and transferred the cause to the District Court.

The District Court held the original allocation invalid as denying voter equality and stayed further proceedings to allow the city an opportunity to seek a charter amendment at the 1966 session of the State Legislature. The charter was amended to provide for the Seven-Four Plan now being challenged.[4] Under the amended charter, the council is composed of 11 members. Four members are elected at large without regard to residence. Seven are elected by the voters of the entire city, one being required to reside in each of the seven boroughs. Pursuant to leave of the District Court, appellees filed an amended complaint challenging the validity of the Seven-Four Plan. The District Court approved this plan. The Court of Appeals reversed, 361 F. 2d 495. The case is here on appeal (28 U. S. C. § 1254 (2)) and we postponed the question of jurisdiction to the merits. 385 U. S. 999.

For the reasons stated in *Moody* v. *Flowers, ante,* p. 97, the case is not one for a three-judge court, the charter being local only and not of statewide application.

In *Sailors* v. *Board of Education, ante,* p. 105, we reserved the question whether the apportionment of municipal or county legislative agencies is governed by *Reynolds* v. *Sims.* But though we assume *arguendo* that it is, we reverse the Court of Appeals. It felt that *Reynolds* v. *Sims* required "that each legislator, State or municipal, represent a reasonably like number in population," 361 F. 2d, at 497, pointing out that Blackwater, where 733 people live, will have the same representation as Lynnhaven with 23,731 and Bayside with 29,048 and Kempsville with 13,900. The Court of Appeals reaffirmed

---

[4] Va. Acts 1966, c. 39.

what it had decided in *Ellis* v. *Mayor and City Council of Baltimore,* 352 F. 2d 123, 128, that "the fundamental principle of representative government in this country is one of equal representation for *equal numbers of people,* without regard to race, sex, economic status, or place of residence within a State." And the court held that the provision for four city-wide members "does not remedy or in any way affect the disproportion of representation of the 7 borough members." 361 F. 2d, at 497.

The Seven-Four Plan makes no distinction on the basis of race, creed, or economic status or location. Each of the 11 councilmen is elected by a vote of all the electors in the city. The fact that each of the seven councilmen must be a resident of the borough from which he is elected, is not fatal. In upholding a residence require-ment for the election of state senators from a multi-district county we said in *Fortson* v. *Dorsey,* 379 U. S. 433, 438:

> "It is not accurate to treat a senator from a multi-district county as the representative of only that district within the county wherein he resides. The statute uses districts in multi-district counties merely as the basis of residence for candidates, not for vot-ing or representation. Each district's senator must be a resident of that district, but since his tenure depends upon the county-wide electorate he must be vigilant to serve the interests of all the people in the county, and not merely those of people in his home district; thus in fact he is the county's and not merely the district's senator."

By analogy the present consolidation plan uses bor-oughs in the city "merely as the basis of residence for candidates, not for voting or representation." He is nonetheless the city's, not the borough's, councilman. In *Fortson* there was substantial equality of population in

the senatorial districts, while here the population of the boroughs varies widely. If a borough's resident on the council represented in fact only the borough, residence being only a front, different conclusions might follow. But on the assumption that *Reynolds* v. *Sims* controls, the constitutional test under the Equal Protection Clause is whether there is an "invidious" discrimination. 377 U. S., at 561. As stated by the District Court:

> "The principal and adequate reason for providing for the election of one councilman from each borough is to assure that there will be members of the City Council with some general knowledge of rural problems to the end that this heterogeneous city will be able to give due consideration to questions presented throughout the entire area.
>
> .        .        .        .        .
>
> "[T]he history—past and present—of the area and population now comprising the City of Virginia Beach demonstrates the compelling need, at least during an appreciable transition period, for knowledge of rural problems in handling the affairs of one of the largest area-wide cities in the United States. Bluntly speaking, there is a vast area of the present City of Virginia Beach which should never be referred to as a city. District representation from the old County of Princess Anne with elected members of the Board of Supervisors selected only by the voters of the particular district has now been changed to permit city-wide voting. The 'Seven-Four Plan' is not an evasive scheme to avoid the consequences of reapportionment or to perpetuate certain persons in office. The plan does not preserve any controlling influence of the smaller boroughs, but does indicate a desire for intelligent expression of views on subjects relating to agriculture which remains a great eco-

nomic factor in the welfare of the entire population. As the plan becomes effective, if it then operates to minimize or cancel out the voting strength of racial or political elements of the voting population, it will be time enough to consider whether the system still passes constitutional muster."

The Seven-Four Plan seems to reflect a detente between urban and rural communities that may be important in resolving the complex problems of the modern megalopolis in relation to the city, the suburbia, and the rural countryside.[5]  Finding no invidious discrimination we conclude that the judgment of the Court of Appeals must be and is

*Reversed.*

MR. JUSTICE HARLAN and MR. JUSTICE STEWART concur in the result.

---

[5] The populations of the seven boroughs are:

| | |
|---|---:|
| Blackwater | 733 |
| Pungo | 2,504 |
| Princess Anne | 7,211 |
| Kempsville | 13,900 |
| Lynnhaven | 23,731 |
| Bayside | 29,048 |
| Virginia Beach | 8,091 |

It is obvious that, if the percentage of qualified voters is in accord with the population, Lynnhaven and Bayside, if united in their efforts, could elect all 11 councilmen even though the election were at large.