George J. MONTANO, Anthony D. Cerrone, Howard Moore, Ida Cirillo, Joseph A. Ferraiolo, Joseph V. Amatruda, Morton J. Dimenstein, Plaintiffs,

v.

Richard C. LEE, Joseph A. Gianelli, Board of Aldermen of the City of New Haven, Defendants.

Civ. A. No. 11238.

United States District Court
D. Connecticut.

June 7, 1967.

MEMORANDUM OF DECISION

CLARIE, District Judge.

The Court retained jurisdiction of this litigation on March 24, 1966, when it granted partial summary judgment to the plaintiffs and found the legislative apportionment of the Board of Aldermen of the City of New Haven to be unconstitutional. 298 F.Supp. 862. At that time, the distribution of representation failed to conform to the requirements of equal representation, "one man, one vote", as established by the United States Supreme Court in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), and companion cases. Proceedings were stayed to afford the defendants an opportunity to voluntarily redistrict the wards of the City by legislative means to meet minimal constitutional standards.

On March 17, 1967, a Special Act of the Connecticut General Assembly, Cities and Boroughs Committee Bill #1787, became law. 33 Sp.Acts 1967, p. 20. It purported to establish thirty (30) aldermanic wards rather than the thirty-three (33) that formerly existed. Section 2(a) of the Act stated the overall purpose and intent of the Act, when it expressly provided that the plan should be consistent with federal constitutional standards. It declared that each ward should be wholly contained in one state assembly district and established a method by which the boundaries could be revamped and the number increased or decreased, should the state assembly districts be subsequently changed.[1] The application of this Special Act was to become effective at the next city election to be held on the first Tuesday after the first Monday of November 1967 and thereafter.

The thirty (30) new wards grouped by assembly districts, Conn.Gen.Stat. ch. 142, § 9–10c, together with a census of their respective populations, as expressed in the last official federal census of 1960, are as follows:[2]

| District 104 | | Variances – highest and lowest wards |
|---|---|---|
| No. 1 ...... 5,923 | | |
| No. 2 ...... 5,300 | | 13.9% |
| No. 3 ...... 5,197 | | |
| 16,420 | | |

| District 105 | | |
|---|---|---|
| No. 4 ...... 5,431 | | |
| No. 5 ...... 5,148 | | 7.8% |
| No. 6 ...... 5,552 | | |
| 16,131 | | |

| District 106 | | |
|---|---|---|
| No. 7 ...... 4,010 | | |
| No. 8 ...... 5,780 | | 44.13% |
| No. 9 ...... 5,480 | | |
| 15,270 | | |

[1] § 2(a) of the Reapportionment Act of the City of New Haven, as passed by the State Legislature. The Act was Committee Bill No. 1787.

[2] Stipulation, paras. 3a–j.

District 107

No. 10 ...... 4,580
No. 11 ...... 4,745      3.6%
No. 12 ...... 4,595
                13,920

District 108

No. 13 ...... 4,425
No. 14 ...... 4,992      28.15%
No. 15 ...... 5,671
                15,088

District 109

No. 16 ...... 4,763
No. 17 ...... 4,497      9.74%
No. 18 ...... 4,340
                13,600

District 110

No. 19 ...... 4,979
No. 20 ...... 4,868      11.06%
No. 21 ...... 4,483
                14,330

District 111

No. 22 ...... 5,050
No. 23 ...... 5,380      13.2%
No. 24 ...... 4,750
                15,180

District 112

No. 25 ...... 6,186
No. 26 ...... 6,445      4.18%
No. 27 ...... 6,198
                18,829

District 113

No. 28 ...... 4,471
No. 29 ...... 3,996      11.88%
No. 30 ...... 4,402
                12,869

It is to be noted that this plan for aldermanic redistricting divided each of the ten (10) legislative assembly districts into three wards, in such a manner that each would be wholly contained within one district, for the purported purpose of simplifying the election machinery and permitting the use of uniform voting lists. The plan intended that each aldermanic ward unit should represent a specific neighborhood, in preference to electing a multiple number of aldermen-at-large for each district or for the city at-large.

The special legislative act was conceived within the framework of the state assembly districts approved in Butterworth v. Dempsey, 229 F.Supp. 754 (D. Conn.1964). While claiming general parity within these districts, the defendants concede that all wards are not proportionately equal.[3] Assembly District 112 (18,829) is 1.46 times as large as District 113 (12,869) and 1.38 times as large as District 109 (13,600). They admit also that Ward 8 (5,780) is 1.44 times the proportion of Ward No. 7 (4,010) and that Ward No. 15 (5,671) is 1.28 times the population of Ward No. 13 (4,425). The smallest ward, No. 29 (3,996) is 61% less than Ward No. 26 (6,445), yet each is entitled to equal representation, one alderman. Thus, in percentage proportion, the valid voting strength of Ward No. 26 is lessened by 61% on the board when compared with that of Ward No. 29. The defendants explain these differences, by claiming that physical and geographic factors such as railroad tracks, the Quinnipiac River, and adjacent town boundary lines considered within the already established pattern of state legislative assembly districts, constitute significant and justifiable reasons to warrant exceptions to the overall policy of equality.

The plaintiffs contend that any attempt to redistricting by using the present assembly districts as a pattern would be unconstitutional, because of the population imbalance already built in to the legislative districts as originally constituted. Their present position is directly contrary to their previous representation

3. Defendants' Brief, p. 2.

before this Court, namely, that the Aldermanic Board should consist of ten (10) members, one from each assembly district. It is also directly in conflict with the plan which the plaintiffs proposed to the Charter Revision Commission, namely, a board of twenty (20) members, two from each assembly district.[4]

On May 22, 1967, the United States Supreme Court decided four cases on matters parallel to the issues raised here. Although it reserved the question of whether the apportionment of municipal legislative agencies was governed by Reynolds v. Sims, it stated "we assume arguendo that it (did apply) is." Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed.2d 656 (U.S. May 22, 1967) (No. 724). While the Supreme Court did not apply the requirement "that each legislator, State or municipal, represent a reasonably like number in population," it set forth the reasons for its distinction in that case, thereby indicating its recognition and adherence to the validity of the principle.

"Each of the 11 councilmen is elected by a vote of all the electors in the city. The fact that each of the seven councilmen must be a resident of the borough from which he is elected, is not fatal. * * *

"By analogy the present consolidation plan uses boroughs in the city 'merely as the basis of residence for candidates, not for voting or representation.' He is nonetheless the city's, not the borough's, councilman. * * * If a borough's resident on the council represented in fact only the borough, (ward) residence being only a front, different conclusions might follow. But on the assumption that Reynolds v. Sims controls the constitutional test under the Equal Protection Clause is whether there is an 'invidious' discrimination. 377 U.S. at 561 [84 S.Ct. at 1381]." Dusch v. Davis, *supra.*

While mathematical equality is an ideal to be sought after in the apportionment of representative aldermanic districts, common sense recognizes that municipal growth, movement of population, redevelopment and community characteristics make it impossible to achieve absolute equality with mathematical exactitude. The best political effort can only attempt to approximate a system of representation, which will not have built-in elements of arbitrariness or discrimination.

"In our view the problem does not lend itself to any such uniform formula, and it is neither practicable nor desirable to establish rigid mathematical standards for evaluating the constitutional validity of a state legislative apportionment scheme under the Equal Protection Clause. Rather, the proper judicial approach is to ascertain whether, under the particular circumstances existing in the individual State whose legislative apportionment is at issue, there has been a faithful adherence to a plan of population-based representation, with such minor deviations only as may occur in recognizing certain factors that are free from any taint of arbitrariness or discrimination." Roman v. Sincock, 377 U.S. 695, 710, 84 S.Ct. 1449, 1458, 12 L.Ed.2d 620 (1964).

The parties have stipulated that Wards No. 15, No. 28, No. 29, and No. 30 have had material increases in population since the last official census; that because of highway construction, redevelopment and federal housing programs the population has, is, and will continue to shift within the City. A substantial number of persons in Ward No. 1 are students, who for the most part have domicils outside of the City, but temporarily reside in that Ward for approximately nine months of the year. It has also been stipulated that the 1960 population was 151,998 (official census shows 152,048). An experimental census, designed to test the procedures for the 1970 census, is now underway in New Haven,

4. See, p. 3 of Plaintiffs' Report to the Court, filed November 14, 1966, and Exhibit A attached thereto.

but in all probability, it will be unavailable until sometime in the Fall of the year; in any event, it will not be an official census count.[5]

■■ A state statute is presumed to be constitutional. McGowan v. Maryland, 366 U.S. 420, 425–426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). To successfully attack the federal constitutionality of an apportionment statute, it must be demonstrated by the plaintiffs that the weight of an individual's vote for legislative ward-alderman, when compared with votes of citizens living in other parts of that same municipality, has been diluted in a substantial manner. The deviations must be of such magnitude, that no policy could justify them. It must be shown that they are not based upon legitimate considerations, which could be justified on any rational ground.

■ While several of these wards demonstrate fair and effective apportionment of assembly districts, such as Wards No. 10 (4,580), No. 11, (4,745) and No. 12 (4,595); other wards such as No. 7 (4,010) and No. 8 (5,780) show the extreme opposite. The difference in the number of constituents represented, between these two (1,770), demonstrates that there is a variation of 44.13%; to that extent the vote of the alderman from Ward No. 8 is substantially diluted and proportionately made less effective. To a lesser degree, Ward No. 15 (5,671) and Ward No. 13 (4,425) a difference of 1,-246, shows a percentage variation of 28.-15%; Ward No. 1 (5,923) and Ward No. 3 (5,197), a difference of 726, a percentage variation of 13.9%. Finally, when we compare the wards across assembly district lines, such as Ward No. 29 (3,-996) and Ward No. 26 (6,445) we find a difference of 2,449, amounting to a variation of 61.28%. In proportion to the number of constituents represented, the vote of the alderman from Ward No. 29 would be at least 60% greater than the vote of the alderman from Ward No. 26. The population norm for each ward is 5,066. Thus, Ward No. 7 is 26.33% less than that average norm, while the norm population is 27.22% less than Ward No. 26. The defendants' attempted justification of these variances is based upon the location of the railroad tracks and the rail yard, the geographic separations caused by the Quinnipiac River, the limitations caused by adjacent town boundary lines, and the attempt to divide state assembly districts, which were previously approved by this Court. See Butterworth v. Dempsey, *supra.*

If the variation of ward population had been primarily caused by the equitable division of lawfully constituted state assembly districts containing a minimal number of deviations in the overall pattern, such exceptions might be considered valid as an integral part of a rational state and municipal policy. If in this instance, the major variances were attributable solely to the population inbalance in District 112 (18,829) compared with the smaller District, 113, (12,869) and its counter parts, and each of the three wards within said assembly districts had been divided so as to contain substantially equal populations, then the overall plan might well be considered as having accomplished an acceptable result, in accordance with minimal constitutional requirements; however, this is not the situation.

A study of the ward boundaries map [6] established by Special Act #1787, considered in the light of the factual stipulation between the parties, discloses no valid reason, policy, or circumstance to justify a population variation between such Wards as No. 7 and No. 8 of 44.13%; No. 15 and No. 13 of 28.15%; No. 1 and No. 3 of 13.9%; or No. 23 and No. 24 of 13.2%. Thus even though the 61.28% variance between Wards No. 29 and No. 26 were considered to be a unique exception in the overall assembly district plan, as well as Wards No. 25 and No. 27. There has been offered no evidence to justify the wide divergence of population

---

5. *Supra,* note 2, at paras. 5–9.

6. See, Defendants' Exhibit No. 1.

in the other wards cited. An integrated urban community, with its general "block plan" layout, affords multiple patterns of choice, in establishing an equitable apportionment of local aldermanic representation, on a neighborhood area or ward basis. The present law creates an expedient and arbitrary division and apportionment; it tolerates an invidious discrimination in its plan of municipal legislative representation.

█ Insofar as § 1 of Special Act #1787 (Cities and Boroughs Committee Bill) purports or attempts to establish substantially equal aldermanic ward boundaries for the City of New Haven, it violates the Equal Protection Clause of the fourteenth amendment to the Federal Constitution and is unconstitutional. Dusch v. Davis, *supra*; Reynolds v. Sims, *supra*; see Swann v. Adams, 385 U.S. 440, 87 S.Ct. 569, 17 L.Ed.2d 501 (January 9, 1967); Ellis v. Mayor and City Council of Baltimore, 352 F.2d 123 (4th Cir. 1965).

The findings of fact as they appear in this Memorandum shall constitute the Court's findings of fact in this case, pursuant to Rule 52(a) Fed.R.Civ.P.; the conclusions of law annexed hereto are attached and incorporated herein by reference as Appendix "A".

### APPENDIX "A"

### CONCLUSIONS OF LAW

1. The complaint sets forth a justiciable controversy between the parties over which the Court has jurisdiction pursuant to 42 U.S.C. §§ 1983, 1988 and 28 U.S.C. § 1343(3) and (4).

2. Plaintiffs are persons residing in municipal legislative districts having less representation than they are entitled to, are properly representative of the class in behalf of which they sue and have standing to maintain this action.

3. Defendants are the principal persons charged with responsibilities relating to the holding of elections to the Board of Aldermen and certifying the results of such elections; and the defendant members of the Board of Aldermen have the authority under Conn.Gen. Stat. ch. 99, 7–187 et seq. to alter the boundaries of the voting districts of the City so as to permit election of members of the Board of Aldermen on a basis which will comport with federal constitutional requirements.

4. The present districting of the Board of Aldermen so debases the voting rights of plaintiffs as to result in an invidious discrimination against plaintiffs who thereby are denied the equal protection of the laws in contravention of the fourteenth amendment of the United States Constitution.

5. So much of § 1 of Special Act # 1787 (Cities and Boroughs Committee Bill) of the 1967 Session of the Connecticut General Assembly, which purports to establish boundaries for the voting districts in the City of New Haven and results in a wide population disparity between the voting districts as a basis for election of members of the Board of Aldermen, being in contravention of the Equal Protection Clause of the fourteenth amendment of the United States Constitution, is void and of no effect.

6. So much of § 1 of Special Act #1787 (Cities and Boroughs Committee Bill) of the 1967 Session of the Connecticut General Assembly as provides for the establishment of the boundaries of each of the thirty (30) wards, to the extent that said provision imposes limitations upon equality of population between the voting districts as a basis for election of members of the Board of Aldermen, being in contravention of the Equal Protection Clause of the fourteenth amendment of the United States Constitution, is void and of no effect.