James L. MOORE et al., Plaintiffs,

v.

Samuel SHAPIRO et al., Defendants.

No. 68 C 1569.

United States District Court
N. D. Illinois, E. D.

Oct. 3, 1968.

Probable Jurisdiction Noted Dec. 16, 1968.

See 89 S.Ct. 488.

Richard F. Watt, Sheli Z. Rosenberg, Richard L. Mandel and Ira A. Kipnis, Chicago, Ill., for plaintiff.

William G. Clark, Atty. Gen. of Illinois, for defendants.

Before HASTINGS, Circuit Judge, and DECKER and LYNCH, District Judges.

## MEMORANDUM OF DECISION

PER CURIAM:

This action was brought before a three-judge District Court convened in the Northern District of Illinois under 28 U.S.C. §§ 2281 and 2284, by twenty-six independent candidates for the offices of Presidential and Vice Presidential electors from the state of Illinois. Defendants are members of the Illinois Electoral Board.

On August 5, 1968 plaintiffs filed nominating petitions signed by 26,500 qualified voters. Defendants ordered the county clerks to refuse to certify plaintiffs for the November 5, 1968 General Elections because plaintiffs' petition did not comply with certain provisions of Section 10–3 of Chapter 46, Illinois Revised Statutes 1967. This Section, along with Section 10–2 of the same Chapter, was amended in 1935 by the addition of the following qualification: "Provided that included in the aggregate total of twenty-five thousand (25,000) signatures are the signatures of two hundred (200) qualified voters from each of at least fifty (50) counties." Plaintiffs' petition did not contain signatures of 200 such voters from each of 50 counties.

Plaintiffs herein are seeking a Declaratory Judgment, pursuant to 28 U.S.C. § 2201, holding the above proviso unconstitutional; declaring the action of the Electoral Board in refusing to order certification of plaintiffs by the county clerks null and void; and declaring plaintiffs' petition valid and sufficient for nomination. The Complaint further seeks an injunction, under 28 U.S.C. § 2202, prohibiting defendants from refusing to certify plaintiffs to the county clerks for nomination.

## JURISDICTION

An identical 1935 Amendment qualifying Section 10–2, Ch. 46, Illinois Revised Statute, 1967 which prescribes the requirements for nominating an independent third party, was challenged before the Supreme Court twenty years ago in MacDougall v. Green, 335 U.S. 281, 69 S.Ct. 1, 93 L.Ed. 3. A three-judge District Court therein had previously dismissed the action for lack of jurisdiction. The Supreme Court affirmed *after* a hearing on the merits. Commenting on this apparent inconsistency, Justice Brennan, in the majority opinion of Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, noted the Supreme Court's disagreement with the District Court's finding of a lack of jurisdiction. 369 U.S., at 203, 82 S.Ct. 691.

■ The *MacDougall* and *Baker* cases are controlling on the issue of jurisdiction in present action. Voting rights are secured by the Equal Protection Clause of the Fourteenth Amendment. The Federal District Courts have jurisdiction under 28 U.S.C. § 1343(3) " * * * to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States." This grant clearly gives this Court jurisdiction to hear the matter before it.

## THE CONSTITUTIONAL ISSUE

The provision of the Illinois Election Code being challenged in this action was found to be constitutional by the Supreme Court of the United States in the case of MacDougall v. Green, supra. In Baker v. Carr, supra, Justice Brennan noted the Supreme Court's prior decision thusly:

"In MacDougall v. Green, (cite omitted), the District Court dismissed for want of jurisdiction, which had been invoked under 28 U.S.C. § 1343(3), 28 U.S.C.A. § 1343(3), a suit to enjoin enforcement of the requirement that nominees for state-wide elections be supported by a petition signed by a minimum number of persons from at least 50 of the State's 102 counties. This Court's disagreement with that action is clear since the Court affirmed the judgment after a review of the merits and concluded that the particular claim there was without merit." 369 U.S. 203, 82 S.Ct. 702, 7 L.Ed.2d 663.

The facts of the *MacDougall* case and the case before the bar are virtually identical except for insubstantial shifts in the concentration of population in the various Illinois counties.[1] Plaintiffs in this case, while admitting that the *MacDougall* decision bears directly against them, contend that the holding of the *MacDougall* case should be disregarded on the theory that the line of cases beginning with Baker v. Carr in 1962 has overruled the *MacDougall* decision by implication.

Justice Clark, concurring in the decision of the majority in *Baker*, was able to distinguish that case from *MacDougall* (and, therefore, also from the instant case) thusly:

"I take the law of the case from MacDougall v. Green (cite omitted), which involved an attack under the Equal Protection Clause upon an Illinois election statute. The Court decided the case on its merits without hindrance from the 'political question' attack. Although the statute was upheld, it is clear that the Court based

---

1. Both plaintiffs in the present case and in the *MacDougall* case alleged that more than half of the registered voters in Illinois reside in one county. (Complaint, Par. 10; 355 U.S., at 28). Plaintiffs presently allege that 61% of the State's voters are now registered in five counties compared with 59% in the same five counties in 1948. (Complaint, par. 34; MacDougall v. Green, 80 F.Supp. 725). Plaintiffs allege that 93.4% of the voters reside in 49 counties compared with 87% in the same 49 counties in 1948. (Complaint, par. 11; 355 U.S., at 283, 69 S.Ct. 1).

its decision upon the determination that the statute represents a rational state policy." 369 U.S. at 251, 252, 82 S.Ct. at 728.

Justices Clark and Stewart agreed that the Tennessee apportionment statute under attack was, contrary to the Illinois statute in *MacDougall,* totally unreasonable and arbitrary.

Ordinarily, discovery of precedent in the form of a Supreme Court decision squarely on point determines an issue. However, in the area of voting rights today we must go further and ask whether or not what was considered to be a "rational state policy" in 1948 is still considered as such today.

■ It is clear that Justices Clark and Stewart concurring in the *Baker* decision, were of the opinion that apportionment of a state legislature, if done on a rational basis, need not be based strictly on population. However, a more strict approach has evolved from subsequent Supreme Court cases. Today, the apportionment of legislative representation in virtually all levels of government must be based on population as nearly as possible. See Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481; Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506; Avery v. Midland, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968).

Some divergence from this standard is necessary, but the character and amount of such divergence which will be tolerated is unclear. Chief Justice Warren, in Reynolds v. Sims, supra, has pointed out that the Supreme Court presently deems it:

* * * expedient not to spell out any precise constitutional tests. What is marginally permissible in one State may be unsatisfactory in another, depending on the particular circumstances of the case. Developing a body of doctrine on a case-by-case basis appears to us to provide the more satisfactory means of arriving at detailed constitutional requirements in the area of state legislative reapportionment. 377 U.S., at 578, 84 S.Ct., at 1390.

While it is clear that constitutional standards in this area may vary among the national, state, county and municipal levels as well as from State to State, we find some guidance from a 1967 Supreme Court case.

The case of Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed.2d 656, involved a local plan consolidating the City of Virginia Beach and Princess Anne County into a new governmental unit of seven boroughs which vary considerably in population. The plan (called the "Seven-Four Plan") created an eleven-member city council elected at large. Each of seven council members was required to reside in a different one of the boroughs.

Plaintiffs therein alleged that the plan violated "the principles of Reynolds v. Sims." The District Court approved the plan, but the Court of Appeals for the Fourth Circuit reversed, 361 F.2d 495, at 497. The Supreme Court upheld the District Court. Justice Douglas, writing the opinion of the Court, found that "the plan uses boroughs in the city 'merely as the basis of residence for candidates, not for voting or representation.'" 387 U.S., at 115, 87 S.Ct. at 1556. The Court further noted that "The Seven-Four Plan seems to reflect a detente between urban and rural communities that may be important in resolving the complex problems of the modern megapolous in relation to the city, the suburbia, and the rural countryside." 387 U.S., at 117, 87 S.Ct. at 1556. No invidious discrimination was found in the plan.

The "Seven-Four Plan" and the challenged Illinois Election Code provision share the same underlying principles—they are but different means to the same effect. The District Court in the *Dusch* case decided that:

"The 'Seven-Four Plan' is not an evasive scheme to avoid the consequences of reapportionment or to perpetuate certain persons in office. The plan does not preserve any controlling influence of the smaller boroughs, but does indicate a desire for intelligent

expression of views on subjects relating to agriculture which remains a great economic factor in the welfare of the entire population."

This description applies equally well to the residence requirements within Sections 10–2 and 10–3 of the Illinois Election Code. The purpose of these provisions is obviously to require a state-wide candidate to show minimal state-wide support. An elected official on the state level represents all the people in the state. Such representatives should be aware of and concerned with the problems of the whole State and not just certain portions thereof. This is the policy behind the challenged provision; it is a rational policy. It is accomplished without undue burden on the potential candidates and without unnecessary interference with the weight or the effectiveness of an Illinois citizen's right to vote.

In fact the right to vote in Illinois would only be unreasonably affected if, somehow, virtually entire populations of 53 of the lesser populated counties decided to preclude a majority of the State's qualified voters from nominating candidates of their choice. This does not appear likely. If such schemes ever came to light, the situation can be re-examined.

Thus, this Court finds that Section 10–3 of the Illinois Election Code, Ch. 46, Illinois Revised Statutes 1967, is an expression of rational state policy and that, therefore, it is constitutional under MacDougall v. Green, supra. As was pointed out in Baker v. Carr, supra, "MacDougall v. Green, (cite omitted), held only that in that case, equity would not act to void the State's requirement that there be at least a minimum of support for nominees for state-wide office, over at least a minimal area of the State." 369 U.S., at 234, 82 S.Ct. at 719, 7 L.Ed.2d 663. This Court agrees with that course of action and follows the same in dismissing the present Complaint.

In sum, plaintiffs contend that, although the case of MacDougall v. Green, supra, is a direct precedent against their constitutional claims, the Supreme Court today would overrule MacDougall v. Green and that, in effect, we should hold this precedent not to be controlling. The short answer to this is that the Court itself has cited MacDougall v. Green in a number of recent decisions and has considered it to be a holding on its merits and has not set aside such a determination. We do not deem it to be our function to second guess and overrule a standing precedent in the identical case now before us. We believe that to be the sole prerogative of the Supreme Court and we respectfully decline to usurp that function.