Max B. **GOLDBLATT**, Plaintiff-Appellant,

v.

The **CITY OF DALLAS**, Defendant-Appellee.

No. 26557.

United States Court of Appeals Fifth Circuit.

Aug. 15, 1969.

Joseph A. Devany, Dallas, Tex., for appellant.

N. Alex Bickley, Ted P. MacMaster, H. P. Kucera, Dallas, Tex., for appellee.

Before THORNBERRY and SIMPSON, Circuit Judges, and CASSIBRY, District Judge.

SIMPSON, Circuit Judge:

The City Charter of Dallas, Sections 19, 20, and 21, divides the city into six substantially equal districts.[1] These sections provide for the city-wide election of nine city councilmen; six of whom must be residents of the six districts; the remaining three must run at large (six-three plan).

In the Dallas City Council election held on April 4, 1967, appellant received the majority of the votes in his residence district but was outpolled in the remaining five districts and lost the election. As a consequence, the defeated candidate sought to vitiate the election results and sought both a preliminary and a perma-

1. The numerical division of each district is not at issue in the present case.

nent injunction in the court below restraining the city from holding elections under Section 21 of the Charter.[2]

The appellant urged the entry of the injunctive orders on the ground that Section 21 is unconstitutional as denying the appellant and all voters in his district equal protection of the law in violation of the Fourteenth Amendment. The court below refused to issue the injunctions and granted the City's motion for summary judgment. After some procedural sparring, this appeal was finally taken.[3]

The appellant wisely does not contend that the Dallas "six-three" city council election structure is unconstitutional per se. An analogous plan was specifically approved by the Supreme Court in Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed.2d 656 (1967). See also Fortson v. Dorsey, 379 U.S. 433, 85 S.Ct. 498, 13 L.Ed.2d 401; Davis v. Thomas County, Georgia, 5 Cir. 1967, 380 F.2d 93; Robertson v. Gallion, M.D.Ala.1968, 282 F. Supp. 157; Reed v. Mann, N.D.Ga.1964, 237 F.Supp. 22. Rather, the appellant's contention is that the charter provision as applied is a denial of equal protection to himself and the other voters of his district.

The essential theory of the appellant is that a Dallas organization known as the Citizens Charter Association (C.C.A.) has used Section 21 to perpetuate and preserve control of the city council. The appellant describes the C.C.A. as a group which is comprised of all powerful millionaires who use their power, influence, position, and money to back their own handpicked candidates.[4]

The appellant asserts that Section 21 is a denial of equal protection to voters because it permits the influence of the C.C.A. to be applied city-wide so as to defeat the will of the voters of a particular district. Further, the appellant suggests that Section 21 constitutes a denial of equal protection to independent candidates who are financially unable to compete with the wealth of the C.C.A. on a city-wide basis. The ultimate effect of Section 21, the appellant concludes, is to stagnate public interest and allow the dictates of a few to control the will of the majority.

Taking the facts alleged as true, no denial of equal protection or invidious discrimination has been demonstrated.

---

2. Section 21 provides that:
    "Sec. 21. OFFICIAL BALLOT—ELECTION.—The City Secretary shall make up the official ballot from the names presented to him in the manner hereinabove set out. The order in which the names of the candidates for each place shall appear on the ballot shall be determined by lot, in a drawing held under the supervision of the City Secretary. The election shall be held in conformity with the election laws now in force in the City of Dallas, or with those that may be hereafter enacted. All members of the City Council shall be elected by a vote of the qualified voters of the City of Dallas at large. All qualified voters in the city shall be entitled to vote for candidates for each place number. The candidate for Councilman receiving a majority of all votes cast as provided in Section 20 hereof, for the position of Councilman under the place number under which his name appears shall be declared the duly elected Councilman to hold said position."

3. Initially the appellant sought to appeal the decision of the district court (which sat as a statutory three-judge court, Title 28 U.S.C., Sec. 2281) directly to the Supreme Court pursuant to Title 28, U.S.C., Section 1253. The Supreme Court in Goldblatt v. City of Dallas, 391 U.S. 360, 88 S.Ct. 1666, 20 L.Ed.2d 646 (1968) stated that it did not have jurisdiction. The basis of this determination, the parties inform us, was that the Dallas City Charter was not of sufficient state wide application to warrant a three-judge district court and consequently no direct appeal could be had. The appellant then moved that this court allow him to file an appeal as if the order of the district court had been rendered by a one-judge court. The motion was granted and this appeal was perfected.

4. C.C.A. candidates have enjoyed extraordinary success over the years. From 1931, the year in which the six-three plan was initiated, to 1967, only 15 non-C.C.A. candidates have been elected although 171 elections have been held.

The Dallas plan simply requires that every City Council candidate must be elected by the entire city. Therefore, the "one man-one vote" principle is automatically complied with because all votes are equal in a city-wide election. The possibility that a particular resident candidate wins in his district but loses city-wide does not amount to discrimination against either the candidate or against the voters of that district. The election is city-wide and the elected official is a representative of the entire city and not merely of a particular district. Consequently, we conclude that Section 21 does not constitute a denial of equal protection either per se or in application.

Stripped of legalese, the appellant is complaining because the citizens of Dallas either from apathy or by design have not exercised the power of the ballot to rid themselves of what the appellant regards as an evil political machine. Whether this view is right or not need not concern us. The wrong of public apathy cannot be righted by judicial compulsion. The district court was correct in granting the City's summary judgment motion.

Affirmed.