Margaret R. BROWN, Judy Knight, Jane Maxwell, Marry Shenefield, Miriam S. Straughan, Sandra H. Shuptrine, Olive J. White, Plaintiffs,

v.

Thyra THOMSON, as Secretary of State of the State of Wyoming, Ed Herschler, Thyra Thomson, Shirley Wittler and James B. Griffith, as members of the State Canvassing Board, and Ed Herschler, as Governor of the State of Wyoming, Defendants,

James L. Thompson, Gerald D. Bardo, Russell Thompson, Kenneth A. Gropp, Richard G. Pfister, Peter M. Hansen, Gertrude Chamberlain, Betty Percival, Mary L. Burke, Board of County Commissioners of the County of Niobrara, Kenneth R. Freeman, as a County Commissioner of the County of Niobrara and in his individual capacity, and Louis L. Landkamer as a County Commissioner of the County of Niobrara and in his individual capacity, Intervening Defendants.

No. C81–292.

United States District Court, D. Wyoming.

April 21, 1982.

---

Sue Davidson and Edwin H. Whitehead of Urbigkit & Whitehead, Cheyenne, Wyo., for plaintiffs.

Steven F. Freudenthal, Atty. Gen., Peter J. Mulvaney, Deputy Atty. Gen., and Randall T. Cox, Asst. Atty. Gen., all for the State of Wyo., for defendants.

Richard J. Barrett of Hathaway, Speight & Kunz, Cheyenne, Wyo., for intervening defendants.

Before DOYLE, Circuit Judge, and KERR and BRIMMER, District Judges.

## MEMORANDUM OPINION

KERR, District Judge.

Plaintiffs have filed this action challenging the constitutionality of the 1981 Reapportionment Law allocating a representative to Niobrara County and Section 3 of Article 3 of the Wyoming State Constitution. Section 3 provides that "each county shall constitute a . . . representative district . . . each county shall have at least . . . one representative." Jurisdiction is based upon 28 U.S.C. § 1343(3) and (4). A three-judge court was convened pursuant to 28 U.S.C. § 2281 to hear this action.

The issue here involved is a narrow one and the action can hardly be described as one of first impression for this Court. For the fourth time, this Court is considering the question of the constitutionality of a reapportionment law enacted by the State legislature. *Schaefer v. Thomson*, 240 F.Supp. 247 (D.Wyo.1964); *Schaefer v. Thomson*, 251 F.Supp. 450 (D.Wyo.1965); *Thompson v. Thomson*, 344 F.Supp. 1378 (D.Wyo.1972).

At issue before the Court is the relatively simple question of whether or not the allocation of a representative to Niobrara County constitutes invidious discrimination and, as such, is unconstitutional.

The relevant facts are simple and not in dispute. The parties have agreed to some of the facts in the form of a stipulation and the evidence presented by both parties to the Court was, for the most part, uncontroverted.

Niobrara County is the least populous of Wyoming's 23 counties with a population of 2,924 people in a state containing 469,557 people. Under the 1981 Reapportionment Act, Niobrara County was allocated its own representative in the State House of Representatives. Niobrara County has had its own representative since its creation in 1913, some 69 years.

Plaintiffs urge that this Court should find that such an allocation is unconstitutional and that Niobrara and neighboring Goshen County should be combined to form one representative district. Defendants and Intervenors take the opposite position and claim that the statistical difference in allocating a representative to Niobrara County is insignificant and that any statistical discrepancies are more than outweighed by a rational State interest in the current reapportionment.

In *Schaefer v. Thomson*, 251 F.Supp. 450 (D.Wyo.1965), this Court was called upon to analyze the reapportionment, or lack thereof, of the State legislature. We found it necessary to reapportion the State Senate,

but held that the reapportionment of the State House of Representatives was not invidiously discriminatory:

> We reiterate our previous opinion that the Wyoming Reapportionment Act of 1963 (Chapter 22, Session Laws of Wyoming, 1963) is not an invidious discrimination insofar as it provides for representation in the State House of Representatives and in that respect it does not violate the Fourteenth Amendment to the United States Constitution.

The *Schaefer* case was affirmed by the Supreme Court in 1966. *Harrison, et al. v. Schaefer, et al.*, 383 U.S. 269, 86 S.Ct. 929, 15 L.Ed.2d 750 (1966). Under the 1963 Reapportionment Act, the House of Representatives had 61 representatives. The State of Wyoming had a total population of 329,646. Niobrara County had one representative with a population of 3,750. The "official divisor" was 5400 people. Four counties fell below the 5400 level, Crook, Niobrara, Sublette and Teton, but each still had its own representative.

In 1972, this Court was again called upon to evaluate another legislative reapportionment scheme. In upholding the constitutionality of the 1971 Reapportionment Law, this Court stated:

> It seems best at this point to dispose of the issue concerning the alleged unconstitutionality of the reapportionment of the House of Representatives. The Act made only five minimal adjustments to the 1963 Reapportionment of the House, which had previously been found constitutional by this Court and affirmed by the United States Supreme Court. The changes increased by one the number of representatives in two districts. These changes all reflected population variations.

> We are of the opinion that the reapportionment of the House by the 1971 Act does not constitute invidious discrimination for the reason that the 1963 reapportionment of the House was not substantially altered and, therefore, the 1971 Act does not abridge the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.

At the time of the 1971 Act, the population of the State was 332,416. The number of representatives was increased to 62 and the official divisor was 5300. There were some shifts in population and representatives were changed to reflect said shifts. Five counties, Crook, Hot Springs, Niobrara, Sublette and Teton, were all below the official divisor in population and yet each received a representative in the House under the 1971 Act. Niobrara County had a population of 2,924 at that time.

Under the 1981 Reapportionment Act now before the Court, the population of the State is 469,557 and the official divisor is 7300. Once again, five counties, Crook, Hot Springs, Niobrara, Sublette and Teton, fall below the population level of the official divisor. Each was given a representative under the 1981 Law. Changes were made to reflect shifting population figures in some of the impacted counties. The number of representatives was increased to 64. None of the changes in the 1981 Law are challenged herein with the exception of the allocation by the legislature of a representative to Niobrara County.

One of the factors to be considered in reapportionment cases involves statistical analysis of the relevant figures. In *White v. Regester*, 412 U.S. 755, 93 S.Ct. 2332, 37 L.Ed.2d 314 (1973), the Supreme Court held that a deviation of more than 10 per cent requires that a rational state policy be established to justify the reapportionment. See also *Mahan v. Howell*, 410 U.S. 315, 93 S.Ct. 979, 35 L.Ed.2d 320 (1973); *Gaffney v. Cummings*, 412 U.S. 735, 93 S.Ct. 2321, 37 L.Ed.2d 298 (1973).

Initially, the 89 per cent relative range figure would appear to conclusively establish a prima facie case and possibly invidious discrimination in the 1981 Reapportionment Law. A close examination of the other relevant statistics, however, soon reveals the fallacy of relying upon only one statistic. Utilizing only the overall relative range figure distorts the picture.

The population differential in Niobrara County between the 1965 court-ordered re-

apportionment, as affirmed by the Supreme Court, and the 1981 Reapportionment Law is the difference between 3,750 and 2,924, or 826 people.

Statistically, the "dilution" of the plaintiffs' votes is de minimis when Niobrara County has its own representative. The improvement overall with the representative deleted ranges from 0.0003 in Teton County to 0.0023 in Laramie County. Such minor improvement hardly reaches the level of significance.

In this action, we do not have a small percentage of the population electing a large number of representatives as was the case in the Senate in *Schaefer v. Thomson*, 251 F.Supp. 450 (D.Wyo.1965). If Niobrara County continues to have its own representative, 46.65 per cent of the population would elect 33 of 64 representatives. Thus, 46.65 per cent is the minimum population which could elect a majority of House members. This figure is comparable to the minimum population percentage of 47.52 per cent electing 53.33 per cent of the Senate seats in the 1965 *Schaefer v. Thomson* decision.

Alternatively, when considering the counties in which the plaintiffs reside, the Court finds that these seven counties elect 28 out of 64 representatives or 43.75 per cent. The seven counties contain 46.3 per cent of the total state population utilizing the 1980 census figures. Comparatively, if plaintiffs' plan is adopted and Niobrara County does not have its own representative, the seven counties in which plaintiffs reside would elect 28 representatives out of 63 or 44.4 per cent of the House of Representatives. Statistically, a .65 per cent change is trivial but, more importantly, such a percentage is insufficient to constitute invidious discrimination. Rather, the effect on plaintiffs is best described as de minimis.

The overall changes that have been made since this Court last considered this issue have not been of sufficient magnitude to constitute invidious discrimination.

The statistician who appeared before the Court was clear and emphatic when he stated that there was no statistically significant change in the relevant figures when the plan allocating a representative to Niobrara County was compared with a plan which combined Niobrara County with Goshen County, thus eliminating Niobrara County's representative.

■ Reapportionment plans are not stricken automatically because of a large deviation. Rather, upon such a showing, the burden of proof shifts to the state to establish a rational justification and state policy for the deviation. The standard to be applied is less stringent than in Congressional reapportionment cases. *Mahan v. Howell*, supra.

In *Mahan*, the Supreme Court clearly stated that a state reapportionment plan must consider population figures but that deviations could be justified by legitimate state interests provided that invidious discrimination is not the end result:

> We conclude, therefore, that the constitutionality of Virginia's legislative redistricting plan was not to be judged by the more stringent standards that Kirkpatrick and Wells make applicable to congressional reapportionment, but instead by the equal protection test enunciated in *Reynolds v. Sims*, supra. We reaffirm its holding that "the Equal Protection Clause requires that a State make an honest and good faith effort to construct districts, in both houses of its legislature, as nearly of equal population as is practicable." 377 U.S. [533], at 577 [84 S.Ct., 1362 at 1390, 12 L.Ed.2d 506]. We likewise reaffirm its conclusion that "[s]o long as the divergences from a strict population standard are based on legitimate considerations incident to the effectuation of a rational state policy, some deviations from the equal-population principle are constitutionally permissible with respect to the apportionment of seats in either or both of the two houses of a bicameral state legislature." Id., at 579 [84 S.Ct., at 1390].

The policy of maintaining the integrity of political subdivision lines in the process of reapportioning a state legislature, the

policy consistently advanced by Virginia as a justification for disparities in population among districts that elect members to the House of Delegates, is a rational one. It can reasonably be said, upon examination of the legislative plan, that it does in fact advance that policy.

In *Gaffney v. Cummings*, supra, the Supreme Court expanded its discussion on the role of population figures in determining reapportionment:

More fundamentally, *Reynolds* recognized that "the achieving of fair and effective representation for all citizens is ... the basic aim of legislative apportionment," id., at 565–566, and it was for that reason that the decision insisted on substantial equality of populations among districts. This is a vital and worthy goal, but surely its attainment does not in any commonsense way depend upon eliminating the insignificant population variations involved in this case. Fair and effective representation may be destroyed by gross population variations among districts, but it is apparent that such representation does not depend solely on mathematical equality among district populations. There are other relevant factors to be taken into account and other important interests that States may legitimately be mindful of. See *Mahan v. Howell*, supra; *Abate v. Mundt*, 403 U.S. 182 [91 S.Ct. 1904, 29 L.Ed.2d 399] (1971); *Dusch v. Davis*, 387 U.S. 112 [87 S.Ct. 1554, 18 L.Ed.2d 656] (1967); *Sailors v. Board of Education*, 387 U.S. 105 [87 S.Ct. 1549, 18 L.Ed.2d 650] (1967); *Burns v. Richardson* [384 U.S. 73, 86 S.Ct. 1286, 16 L.Ed.2d 376], supra. *An unrealistic overemphasis on raw population figures, a mere nose count in the districts, may submerge these other considerations and itself furnish a ready tool for ignoring factors that in day-to-day operation are important to an acceptable representation and apportionment arrangement.* [Emphasis added].

Both the State defendants and the intervening defendants have established a rational policy basis which justifies the statis-tical deviations which exist under the 1981 Reapportionment Law.

Wyoming as a state is unique among her sister states. A small population is encompassed by a large area. Counties have always been a major form of government in the State. Each county has its own special economic and social needs. The needs of the people are different and distinctive. Given the fact that the representatives from the combined counties of Niobrara and Goshen would probably come from the larger county, i.e. Goshen, the interests of the people of Niobrara County would be virtually unprotected.

The people within each county have many interests in common such as public facilities, government administration, and work and personal problems. Under the facts of this action, to deny these people their own representative borders on abridging their right to be represented in the determination of their futures.

In Wyoming, the counties are the primary administrative agencies of the State government. It has historically been the policy of the State that counties remain in this position.

The taxing powers of counties are limited by the Constitution and some State statutes. Supplemental monies are distributed to the counties in accordance with appropriations designated by the State Legislature. It comes as no surprise that the financial requirements of each county are different. Without representation of their own in the State House of Representatives, the people of Niobrara County could well be forgotten.

■ It is the opinion of this Court that the allocation by the State Legislature of a representative to Niobrara County in the 1981 Reapportionment Law is not unconstitutional. The allocation is not statistically significant and does not constitute invidious discrimination. Under the 1981 Reapportionment Law, the integrity of political boundaries remains intact while a rational State policy continues to be maintained as it has been since 1913 in Niobrara County.

This Memorandum Opinion constitutes the Findings of Fact and Conclusions of Law and additional findings and conclusions are unnecessary.

An Order will be entered dismissing the Complaint with prejudice. Each party is to pay their own costs.

WILLIAM E. DOYLE, Circuit Judge, specially concurring.

I concur in both the result and the reasoning given by Judge Kerr in his opinion. I have prepared a supplemental opinion not because of any difference that I have, but rather to express my own conclusions based upon the study of the record and of the cases.

As Judge Kerr said, the issue here is whether the action of the legislature in enacting the reapportionment statute was in error because it gave to Niobrara County a representative, even though its population did not justify it. Wyoming has a Constitutional provision, § 3 of Article III, of the Wyoming State Constitution, which provides that "each county shall constitute a representative district * * * each county shall have at least * * * one representative."

Jurisdiction herein arises under 28 U.S.C. § 1343(3) and (4). A three-judge court was convened pursuant to 28 U.S.C. § 2284 to hear this action.

The issue involved is, as indicated above, a somewhat narrow one. It pertains to a single county. The Legislature sought to follow a formula provided by Wyoming Statute § 28–2–109(a)(ii). It reads as follows:

The rates for the apportionment of the representatives is the smallest number of people per representative which when divided into the population in each representative district as shown by the official results of the 1980 federal decennial census with fractions rounded to the nearest whole number results in a house with sixty-three (63) representatives.

Section 3 of Article III really requires that the reapportionment be carried out county by county. The average population for a representative was determined to be 7,337. As to every county in Wyoming except Niobrara it was possible to come very close to carrying out the ideal in accordance with the representative number. A bona fide effort was made to fairly arrive at each solution in accordance with the formula. The result was about as fair and equal as was possible. To be sure, there were some counties which were slightly over-represented and some which were to a slight degree under-represented, and Niobrara is the only county which could be regarded as being substantially over-represented, because its population was shown to be 2,924. An effort was made to follow out the preceding history by awarding a representative to Niobrara County. It had held its own from the 1971 census to the present time, the population remaining at 2,924. During previous years it had been a more populous county, and also one rich in minerals, and productive in farming and ranching. However, since the sixties there have been some population changes, and these changes have left Niobrara with a relatively small population considering its size and importance, in relationship to the representation number of 7,337.

As we have noted above, each county has traditionally been a representative unit, and, indeed, this approach has been approved by the Supreme Court. *Harrison v. Schaefer*, 383 U.S. 269, 86 S.Ct. 929, 15 L.Ed.2d 750 (1966). Five counties, Crook, Hot Springs, Niobrara, Sublette and Teton, were all over-represented, but Niobrara had a lower population for the official divisor than the others. The Wyoming Legislature recognized this, and it raised the number of representatives from 63 to 64 in order to give Niobrara the representation that it had previously had. In the other counties where the population was below the divisor each received one representative, notwithstanding that it resulted in their being slightly over-represented.

The only result which is attacked by the plaintiffs is Niobrara, because, I suppose, the numerical difference is great. The over-representation is noteworthy.

But it strikes me that no one has suffered discrimination as a result of this. If a representative had been taken away from one of the other counties in order to give Niobrara one, it would be a different matter. Someone would have suffered. On the other hand, inasmuch as the Legislature created a new additional representative, rather than taking away one or more, the result was a total of 64 rather than 63. As a result of this, no county suffered, and no one can claim that he or she was injured. Niobrara was benefited, but no corresponding injury flowed from the action. Every other county comes very close to fair and equitable representation.

If the numbers approach were to be followed religiously it would mean that one single county would have to relinquish representation. Represented districts would have to be merged in order to satisfy the one-man, one-vote formula. As Judge Kerr has indicated in his opinion this would upset the representation by county approach that has been historically followed in Wyoming. It would result in inequity in terms of one county having no representation whatsoever, and all other counties having at least one representative. This would result in others having all the representation. This could result in a populous county being paired nearer this representative district with a small county. The large county would dominate the election.

Wyoming has good reasons for clinging to the county as a representative district because this insures that the peculiar needs of each and every county can be represented in the Legislature. Although this might not carry out fully the equality of numbers of voters within the various election districts it comes close enough to be roughly fair.

The Legislature posed an alternative, and that was that if the one representative in Niobrara County plan was held to be invalid, that Niobrara would be placed in an election district with neighboring Goshen County, which has a population of 12,040, and has two representatives. Thus, the result of this would be that Goshen's representatives would be assigned the task of representing Niobrara County, also. The consequence would be that Niobrara would not have its own representative.

In the case of *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), the Supreme Court found the reapportionment of the Alabama Legislature to be unconstitutional where the ratio between population in the largest Senate district to the smallest was 41 to 1, and the ratio between the largest and the smallest House district was 15 to 1. As a result of the reapportionment, a small minority of the population, 25.7%, was allowed to elect a majority of the representatives, and 25.1% to elect a majority of the members of the Senate. *Reynolds* established that both houses of the state legislature have to be apportioned so that the districts are as near to equal population as is practical. The Court stressed, however, that "mathematical exactness or precision" is not required. *Id.* at 577, 84 S.Ct. at 1390. There must be substantial compliance with the goal of population equality. The *Reynolds* Court also held that a state may rationally consider according to political subdivisions some independent representation in at least one body of the state legislature, as long as the basic standard of equality of population among districts is maintained. *Id.* at 580, 84 S.Ct. at 1391. The Court there pointed out that "carried too far, a scheme giving at least one seat in one house to each political subdivision (for example, to each county), could easily result, in many states, in a total subversion of the equal population principle." *Id.* at 581, 84 S.Ct. at 1391. That latter possibility is not present, of course, in the case at bar.

One of the recent cases in which the Supreme Court has determined the presence of invidious discrimination is *Swann v. Adams*, 385 U.S. 440, 87 S.Ct. 569, 17 L.Ed.2d 501 (1967), wherein the Court held that a variance of 25.65% in one house of the Florida legislature, and 33.55% in the other was impermissible, "absent a satisfactory explanation grounded on acceptable state policy." *Id.* at 444, 87 S.Ct. at 572.

*Kilgarlin v. Hill*, 386 U.S. 120, 87 S.Ct. 820, 17 L.Ed.2d 771 (1967), invalidated a state plan, too. There the Court held that the 1965 Texas reapportionment statute was invalid. The plan provided that districts varied from 14.84% over-represented to 11.64% under-represented, for a total deviation of 26.48%, with the ratio between the largest and the smallest districts being 1.31 to 1. There again it was said this was presumptively invalid.

*Whitcomb v. Chavis*, 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971), held that where there was a maximum variance in population of Indiana Senate seats of 28.20%, with the ratio between the largest and the smallest districts of 1.327 to 1, and the maximum variance in house districts of 24.78% with a ratio of 1.279 to 1, the apportionment plan did not comply with the requirements of the equal protection clause. None of the above cited cases govern the present situation involving as it does a single county which has received a benefit, namely representation.

The more recent case of *Mahan v. Howell*, 410 U.S. 315, 93 S.Ct. 979, 35 L.Ed.2d 320 (1973), is relied on by both sides. The reapportionment of the Virginia House of Delegates was challenged as being in violation of the Equal Protection Clause of the Fourteenth Amendment because there were impermissible population deviations of 16.4%. It was held in *Mahan* that this variation was not excessive. It resulted from Virginia's rational objective of preserving the integrity of political subdivision lines. The *Mahan* Court relied on *Reynolds* for the point that more flexibility is afforded to states in legislative reapportionment than is allowed in congressional redistricting. Such flexibility was ruled in *Mahan* to be constitutionally permissible for the reason that there are a larger number of seats in the state legislative body to be distributed than in congress, and as a result it may be possible for a state to use political subdivision lines to a greater extent in establishing state legislative districts.

The more stringent standards of *Kirkpatrick v. Preisler*, 394 U.S. 526, 89 S.Ct. 1225, 22 L.Ed.2d 519 (1969), and *Wells v. Rockefeller*, 394 U.S. 542, 89 S.Ct. 1234, 22 L.Ed.2d 535 (1969), were rejected. Instead, the Court reaffirmed the *Reynolds* doctrine, "that as long as the divergences are based on legitimate considerations incident to the effectuation of a rational state policy, some deviation from the equal population principle are permissible * * *." *Mahan, supra,* at 325, 93 S.Ct. at 985. The 16% deviation which was approved in *Mahan* is a good deal less than the percentage deviations that were found to be invalid in the previous decisions of the Supreme Court. It was acknowledged that the percentage deviation approved in *Mahan* "may well approach the tolerable limits; we do not find it exceeds them." *Id.* at 329, 93 S.Ct. at 987.

*Gaffney v. Cummings*, 412 U.S. 735, 93 S.Ct. 2321, 37 L.Ed.2d 298 (1973), and its companion, *White v. Regester*, 412 U.S. 755, 93 S.Ct. 2332, 37 L.Ed.2d 314 (1973), also define standards for reapportionment. In *Gaffney*, the maximum deviation is 7.83% and in *White*, 9.9%. In both cases the Court concluded that there was no violation of equal protection, and that such minor deviations did not make out a *prima facie* case of invidious discrimination.

*Gaffney* stands for the proposition that the aim of legislative apportionment is fair and effective representation for all citizens. *Id.* at 748, 93 S.Ct. at 2329. It was acknowledged that this could be destroyed by gross population variations among districts, but it is apparent that such representation does not depend solely upon mathematical equality among district populations; other relevant factors are to be considered, as well as important state interests. The question that is to be asked in order to comply with the decision in *Gaffney* is will this plan deprive any person of fair and effective representation in the state legislature.

In *White* the Court said "[W]e do not consider relatively minor population deviations among state legislative districts to substantially dilute the weight of individual votes in the larger districts so as to deprive

788

individuals in these districts of fair and effective representation." *Id.* at 764, 93 S.Ct. at 2338.

This brings us back to the present case and the disproportion in a single district. Is it injurious to the remainder of the population of Wyoming? No discomfort is apparent as a result of giving the people of Niobrara County the sorely needed representation. It finally is to be noted and concluded that there is not the slightest sign of any group of people being discriminated against here. There is no indication that the larger cities or towns are being discriminated against; on the contrary, Cheyenne, Laramie, Casper, Sheridan, are not shown to have been suffered in the slightest degree. There has been no preference for the cattle-raising or agricultural areas as such.

In reading the decisions of the Supreme Court, one tends to conclude that the apportionment cases differ on their facts, and Wyoming is certainly no exception. Its problems are different from those which are present in most every other state in the union. Geographically it is large, but population-wise, it is relatively small, although it is growing. There were substantial differences in many of the plans that were condemned, but these were across the board and were not present in a single unit, as here. *Cf. Connor v. Finch,* 431 U.S. 407, 97 S.Ct. 1828, 52 L.Ed.2d 465 (1977); *Roman v. Sincock,* 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620, 710 (1964); *Reynolds v. Sims, supra,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964).

In *Connor, supra,* the result might very well have been different had Mississippi taken pains to call attention to the unique features in the political structure sufficient to justify more than *de minimis* variations.

The defendants in the case at bar rely heavily on the fact that prior Wyoming reapportionment plans have been upheld, and it is true that the 1963 plan, outlined in 251 F.Supp. 450 (D.C.Wyo.1965), was affirmed by the Supreme Court, *sub nom.* in *Harrison v. Schaefer,* 383 U.S. 269, 86 S.Ct. 929, 15 L.Ed.2d 750 (1966). There is little to distinguish the 1966 case from the present case, and therefore, one would be hard put to reach a different conclusion in this case without, in effect, overruling the Supreme Court's affirmance in the *Schaefer* case, a course which we do not choose to follow.

In conclusion, after having heard the evidence and after having reviewed it, together with the well reasoned opinion of Judge Kerr, I see good reasons for concurring in the opinion of Judge Kerr, and in denying the relief which has been sought by the plaintiffs, i.e., judicial reapportionment of the several counties in the state. The legislative reapportionment by the Wyoming Legislature was generally fair and equitable. The representation for Niobrara County did not injure the other counties. The representation given to Niobrara was accomplished by adding one more representative than had been planned. The result was not discriminatory nor invidious.

One further thought: The Legislature's alternative reduction of the number of members by one, and the combining of Niobrara County with Goshen County, while it might satisfy the numbers, is not, in any other respect, an attractive option.