**H. S. KEANE, et al., Plaintiffs,**

**v.**

**Della GOLKA, et al., Defendants.**

**Civ. No. 1520L.**

United States District Court
D. Nebraska.

Sept. 26, 1969.

Van Steenberg, Winner & Wood, Scottsbluff, Neb., and Marti, O'Gara, Dalton & Bruckner, Lincoln, Neb., for plaintiffs.

Laurice M. Margheim, Alliance, Neb., for defendants.

Before BRIGHT, Circuit Judge, and ROBINSON, Chief Judge, and VAN PELT, District Judge.

## MEMORANDUM

PER CURIAM.

Plaintiffs Keane and others brought this action questioning the constitutionality of certain statutes of Nebraska relating to elections and particularly with reference to elections at which school district reorganization plans are submitted to electors.

A three-judge court was requested and by order of the Chief Judge of the United States Court of Appeals for the Eighth Circuit was properly convened. See Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967); Sailors v. Board of Education, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967).

A hearing was requested and held prior to a special election set for May 8, 1969, at which plaintiffs asked that the election be enjoined and defendants asked, by motion filed at the hearing, that the case be dismissed.

The court orally announced its ruling on May 1, 1969 following the hearing and refused injunctive relief for reasons then orally stated.

There was discussion of submitting the case for final decision upon the record made at the May 1 hearing. Counsel agreed that the court construe defendants' motion to dismiss as a motion for summary judgment. Provision was made for additional briefs which have now been filed. The matter now stands submitted on the record of May 1.

The court concludes that Neb.Rev. Stat. § 79–426.05 (Reissue 1966) is constitutional and that the court was correct in its decision orally announced at

the time the motion for a temporary injunction was denied. It should, however, set down its reasons for so holding which will constitute its findings of fact and conclusions of law both on the motion for a temporary injunction, on the motion for summary judgment and on the merits.

Plaintiffs are residents, electors and taxpayers of Class I and Class III School Districts of the State of Nebraska, located in Box Butte County, Nebraska, and are entitled to bring this suit. Defendants, except defendant Hanson Murray, who is County Superintendent of Box Butte County, which is an elective position under the election laws of Nebraska, are members of the County Committee for the Reorganization of School Districts for Box Butte County, Nebraska, as created under the statute above mentioned.

This court has jurisdiction of the parties and of the controversy.

Pursuant to the statutes relating to school district reorganization, a plan was devised and filed with the County Committee known as the Hemingford Plan. (Hemingford is a town in Box Butte County, within the school district area affected.) The plan provided for an elementary and high school, free busing of students, set forth plans as to courses to be offered, accreditment, taxation and many matters vitally of interest to parents, taxpayers and to the general communities affected. Details of the plan are immaterial to the issues before the court, except to say that the plan involved both Class I districts and a Class III district.

Under Neb.Rev.Stat. § 79–102 (Reissue 1966), a Class I district includes any school which conducts elementary grades, while a Class III district includes a district embracing territory having a population of more than 1,000 and less than 50,000 which maintains under one school board both elementary and high school grades. The validity of this classification is not challenged here. The Hemingford plan was submitted to the County Committee under the procedures of the school reorganization statutes. Committee approval was obtained and the committee determined to submit the plan to the electors at the May 8 election heretofore mentioned. The court has since been advised that the election was held. An election contest or appeal was discussed. Whether such a proceeding is now pending in the state courts, this court does not know and it is immaterial. The outcome of the election also is immaterial except to say that the election did not make the issues of this case moot.

Under the applicable statutes, the various classes of school districts to be affected by the reorganization vote as units. It requires a majority of electors in each unit to approve the plan. In the Hemingford Plan, there is one Class III district having a population of 827 and having 534 electors while seven Class I districts are involved, having a combined population of 629 and 329 electors. Thus under the law 165 persons constituting a majority of the Class I electors voting as a unit can defeat the plan, although the 165 are only approximately 20% of the total electors in the two classes of districts. This unit voting creates a situation where the vote of an elector in a Class III district does not have equal weight with the vote of an elector in a Class I district when the total vote cast on the issue of reorganization is considered. The resulting dilution of the Class III vote is claimed by the plaintiffs to be contra to the principle of "one man, one vote" as announced in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

The second contention of the plaintiffs is that the composition of the County Committee which prepares the reorganization plan does not reflect the population distribution within the county and thus is similarly subject to the above noted constitutional fallacy. The statute governing the composition of the County Reorganization Committee requires a simple majority of the members to be from Class I school districts with the remaining classes of districts to be represented by one member. These posi-

tions are filled by an elective process whereby all members of the various school boards and boards of education within the county are electors. Neb. Rev.Stat. 79–426.05 (Reissue 1966) As this statutory scheme is applied in Box Butte County, the resulting configuration of the Committee is three members representing the 2291 persons for the Class I districts and two members representing the 8672 persons in the Class III districts. It is this disproportional representation that the plaintiffs challenge under the rule of the *Baker* case.

We first consider the allegation that the unit system of voting as heretofore described is in contravention of the "one man, one vote" requirement and is therefore constitutionally infirm. The United States Supreme Court has observed that where the franchise is denied an individual or a group of individuals or the weight of his or their vote is diluted in any manner, such a situation must be subject to close scrutiny by the courts. Kramer v. Union Free School District No. 15, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969). The result of such scrutiny is reflected in Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968) upon which the plaintiffs rely. The plaintiffs urge *Avery* upon this court not as controlling in the instant case but rather for the implications it contains with respect to the "one man, one vote" rule.

To begin with, we note the statement of Mr. Justice Harlan, concurring in Hunter v. Erickson, 393 U.S. 385 at 393, 89 S.Ct. 557 at 562, 21 L.Ed.2d 616 (1969):

> "For Equal Protection purposes, I believe that the laws which define the powers of political institutions fall into two classes. First, a statute may have the clear purpose of making it more difficult for racial and religious minorities to further their political aims. Like any other statute which is discriminatory on its face, such a law cannot be permitted to stand unless it can be supported by state interests of the most weighty and substantial

kind. McLaughlin v. Florida, 379 U. S. 184, 192, 85 S.Ct. 283, 288, 13 L. Ed.2d 222 (1964).

> "Most laws which define the structure of political institutions, however, fall into a second class. They are designed with the aim of providing a just framework within which the diverse political groups in our society may fairly compete and are not enacted with the purpose of assisting one particular group in its struggle with its political opponents."

It is into this second class that the challenged statute falls. Any reorganization under the Nebraska statutes contemplates a consolidation of school districts causing the emergence of a new district and the dissolution of formerly independent districts. In arriving at a reorganization procedure the Nebraska Legislature balanced the power of the larger classes of school districts against the smaller classes. Where in the *Avery* case the Supreme Court was faced with unequal voting districts having equal representation on the board of county commissioners, in the instant case the thrust of the voting structure goes to balancing the respective voting power of the various classes within a proposed reorganization area.

We find in this statutory plan of voting procedure no "invidious discrimination." Reynolds v. Sims, 377 U.S. 533, 561, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). Rather it reflects an attempt to reach a system of reorganization that will represent the interests of all the classes of districts that are to be affected by the reorganization plan. Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed.2d 656 (1967).

It is our conclusion that the unit system of voting as found in this case does not abridge Fourteenth Amendment rights in that it violates the "one man, one vote" rule announced in Baker v. Carr, *supra*.

We turn next to an examination of plaintiffs' allegations concerning the composition of the County Reorgani-

zation Committee. There is little need to discuss the holdings of Baker v. Carr, *supra*; Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963); and Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) in regard to this contention. We do not have here the kind of situation to which the court in those cases applied the "one man, one vote" rule.

■ At the time this case was heard and the temporary injunction was orally denied, the court was not unmindful of the general rule that elections are not to be enjoined unless clearly the statute under which called is unconstitutional or the procedures for calling so clearly contra to the statutes as to make the election effort invalid. This element while important at the time of the hearing was not controlling.

The real question is whether Sailors v. Board of Education, 387 U.S. 105, 87 S. Ct. 1549, 18 L.Ed.2d 650 (1967) covers the issues here presented. If it does the relief asked must be denied. *Sailors* was an action to enjoin detaching certain schools from Grand Rapids, Michigan, and attaching them to Kent County. The constitutional question involved the selection of the county school board, which was chosen by delegates from local boards and not by the electors of the county. The local schools boards were elected by popular vote of the residents of the districts. These boards sent a delegate to a biennial meeting at which the county board was elected. It was argued in *Sailors*, as it is here, that such a method of choosing school members is invalid under Gray v. Sanders, *supra*, and violated the "one man, one vote" principle of Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964).

The Supreme Court found no constitutional reason why such offices could not be chosen other than by an election.

"Viable local governments may need many innovations, numerous combinations of old and new devices, great flexibility in municipal arrangements to meet changing urban conditions.

We see nothing in the Constitution to prevent experimentation. At least as respects nonlegislative officers, a State can appoint local officials or elect them or combine the elective and appointive systems as was done here." Sailors v. Board of Education, 387 U. S. 105, 110–111, 87 S.Ct. 1549, 18 L. Ed.2d 650.

In turn, plaintiffs claim *Sailors* is not applicable because the Court held the office was a nonlegislative one. Plaintiffs point to the case of Nickel v. School Board of Axtell, 157 Neb. 813, 61 N.W. 2d 566 (1933), as holding that a county school reorganization committee in Nebraska is a legislative body and that the fixing of boundaries of a school district is a legislative function. Notwithstanding the fact that the Nebraska Supreme Court did so hold in *Nickel*, this does not make *Sailors* inapplicable. The opinion in *Sailors* sets forth the many functions and duties of the county board under Michigan law. The duties are many as compared with the Nebraska counterparts. There is included the changing of district boundaries. We read in Footnote 7, p. 110 of 387 U.S., p. 1553 of 87 S.Ct.:

"One of the board's most sensitive functions, and the one giving rise to this litigation, is the power to transfer areas from one school district to another. Mich.Stat.Ann. § 15.3461 (1959)."

■ This function of determining boundaries was not enough to cause the Court in *Sailors* to hold that the board was a legislative body and to apply the doctrine of "one man, one vote." Similarly here we conclude it is not enough. We conclude that under the facts of the *Sailors* case the function of the defendants as a school reorganization committee is not sufficient to make it a legislative body as such term is used *Sailors*.

Experimentation is to be encouraged. The selection of a County Committee to explain the problems of school consolidation and to prepare and submit plans to the voters should be left to the proce-

dures provided by the legislature. Courts should not interfere in the submission of such reorganization plans to the electors, under a system which prevents small districts from being taken into larger districts or larger districts from taking over small district schools without the affirmative vote of a majority of the electors in each class of districts.

We conclude that the principle of "one man, one vote" has no application to the selection of a County Committee in Nebraska and that plaintiffs have not been deprived of any constitutional right in the selection of the County Reorganization Committee in following the procedures which the Nebraska Legislature provided in the School District Reorganization Bill.