IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MICHAEL CARLSON, JERROLD R. GONCE, JEFFREY BOSSLER, RICHARD PETERSON, MARC FORLENZA, and GREGORY AYERS, | ) ) ) ) ) | No. 70710-8-I<br><br>DIVISION ONE |
| Appellants/Cross Respondents, | ) ) | |
| v. | ) ) | |
| SAN JUAN COUNTY, a political subdivision of the State of Washington, THE STATE OF WASHINGTON, JAMIE STEPHENS, and LOVEL PRATT, | ) ) ) ) ) | PUBLISHED OPINION |
| Respondents/Cross Appellants, | ) ) | |
| ELISABETH BYERS, ROBERT JARMAN, BRIAN MCCLERREN, PATTY MILLER, and RICK HUGHES, | ) ) ) ) | |
| Necessary Parties. | ) | FILED: September 2, 2014 |

SCHINDLER, J. — In the 2012 general election, the voters of San Juan County approved Proposition No. 1. Proposition No. 1 amended the San Juan County Home Rule Charter to reduce the number of county council members from six to three members, each residing in one of three unequal size residency districts but nominated and elected by the voters in an at-large countywide election. San Juan County residents Michael Carlson, Jerrold R. Gonce, Jeffrey Bossler, Richard Peterson, Marc

Forlenza, and Gregory Ayers (collectively Carlson) appeal summary judgment dismissal of the complaint for declaratory and injunctive relief. Carlson contends Proposition No. 1 and the statutes that allow residency districts with unequal populations violate equal protection; due process; and article I, section 12 and article I, section 19 of the Washington State Constitution. Carlson also claims the Proposition No. 1 ballot title violates article II, section 19 of the Washington State Constitution; and Proposition No. 1 did not comply with former San Juan County Home Rule Charter article 8, section 8.31(3) (2005). Because there is no evidence that the residency districts with unequal populations either dilutes the strength of an identifiable element of the voting population or otherwise results in discrimination, we affirm summary judgment dismissal of the complaint for declaratory and injunctive relief.

## FACTS

San Juan County (County) is comprised of several dozen islands located in the northwest corner of Washington. The largest islands are San Juan, Orcas, Lopez, and Shaw.

In 2005, the voters approved adoption of a "Basic Home Rule Charter" (Charter) "for the governance of San Juan County." The voters also approved an amendment that increased the number of council members from three to six, and created six legislative districts of "nearly equal populations" with each district nominating and electing a county council member. In addition, the voters approved establishing a charter review commission (CRC) elected from the six voting districts and "apportioned according to the population distribution" of that district. The amendment states the CRC members would be elected five years after the adoption of the Charter "to determine its

2

adequacy and suitability to the needs of the County," make recommendations, and propose amendments.

The voters elected 21 CRC members in 2011. From January to May 2012, the CRC held weekly public meetings. Current and former elected officials and the public attended the meetings and testified. The CRC made a number of recommendations, including reducing the number of council members from six to three members, establishing three residency districts, and requiring nomination and election of the council members in an at-large countywide election. The CRC published detailed findings identifying the "problems with the existing Charter" and the proposed recommendations. The CRC found that a council with six members resulted in greater expense and delay, reduced accountability, undermined public confidence, and resulted in council members being unresponsive to residents outside their district. The findings state, in pertinent part:

**Finding 1. Number of Council Members:**

. . . .

1. A membership of six on the County's governing Council has resulted in greater expense than originally anticipated, in part because of the increasing expense of personnel benefits, but also because of greater overhead costs of office space, computer systems and staff support time . . . .

2. A membership of six on the County's governing Council has resulted in the creation of closed committees of that body which has damaged public confidence in the transparency of County governance . . . . Due to the limits set forth in the Open Meetings Act, a meeting of any two members of a three-person Council constitutes an official meeting . . . . A legislative body of three results in all Council business being held in open meetings, providing for greater transparency to the citizens.

3. The Commission finds logically that the ability to make decisions in a group of three is more efficient than with six members. . . . [T]he potential

3

of deadlocked votes and extra time needed for decisions has been frustrating to the public and even to some sitting Council members. . . .

. . . .

5. The nature of six part-time Council members from six districts, being oriented and guided in their jobs by an Administrator, has led to a leadership accountability vacuum resulting in inefficiency in county government and confusion about the role of Council members. (See also Finding 2 relating to countywide elections and Finding 5 relating to substituting a subordinate manager for a separate administrative branch.)

. . . .

7. The Commission believes that fewer Legislative positions will encourage greater competition in races, resulting in fewer uncontested races and more choices for voters.

. . . .

9. There is a strong and well-understood tradition in Washington State, founded on the State Constitution (Article XI, Section 4) and practiced in San Juan County since its founding, that three elected legislators can represent the citizens and function in an efficient and just manner and bring the County together as a whole.

10. Under the current six-member Council system, three members can meet privately with staff and administrative personnel. This is because three members do not constitute a quorum of the Council. Nevertheless, the same three members, while not constituting a quorum, can block any action by the Council. This obstructive capacity is not possible with a three-member Council (see CRC minutes 2/25, Lovel Pratt). The Commission finds unpersuasive a justification for private meetings that allow wider latitude for expression by Council members than a public meeting would allow (see CRC minutes 2/3: Rich Peterson, 2/18: Patty Miller).

. . . .

**Finding 2. Countywide Elections:**

. . . .

1. The current six-member board, elected initially by district, has resulted in Council members being unresponsive to those living outside "their

4

district," thereby impairing the Council's functions as a whole in responding to citizens' legitimate concerns . . . .

2. Countywide elections will provide countywide accountability as all legislators are responsible to all county electors, thereby making political accountability and accessibility congruent with the legislators' legal obligations . . . .

. . . .

**Finding 3. County Council Residency Districts:**

Although the Commission finds that, while countywide elections are preferable as assuring countywide concern and representation by each council member, one consequence, if uncured, could be election of all three council members from the island with the largest population. Accordingly, Council candidates are required to be nominated from separate residential districts, delineated in accordance with RCW 36.32.020 that accommodates the unique geographic nature of San Juan County and proved workable for over a hundred years prior to Charter adoption.[1]

The CRC proposed three Charter amendments for submission to the voters in the general election in November 2012. Proposition No. 1 reduced the number of county council members from six to three and created three residency districts with unequal populations. The smaller neighboring islands were incorporated into each of the residency districts. The three residency districts are District 1, San Juan Island and 15 neighboring islands with a population of 7,662; District 2, Orcas Island and 27 neighboring islands with a population of 5,387; and District 3, Lopez Island and Shaw Island and 19 neighboring islands with a population of 2,720.[2]

Proposition No. 2 clarified administrative and executive powers. Proposition No. 3 specifically states that all meetings of the county council are subject to the state Open

---

[1] Boldface in original.

[2] The populations were based on the 2010 census.

5

Public Meetings Act of 1971, chapter 42.30 RCW. The voters approved the proposed Charter amendments.

On December 4, 2012, Michael Carlson, a resident of San Juan Island; Jerrold R. Gonce, a resident of Lopez Island; and Jeffrey Bossler, a resident of Orcas Island (collectively Carlson), filed a complaint for declaratory and injunctive relief against San Juan County and the State of Washington. Carlson alleged Proposition No. 1 and the statutes that allow unequal size residency districts for island counties of less than 35,000 violated equal protection; due process; and article I, section 12 and article I, section 19 of the Washington State Constitution. Carlson also alleged the ballot title for the three propositions violated Washington State Constitution article II, section 19, the subject-in-title and single-subject rule; and did not comply with former article 8, section 8.31(3) (2005)[3] of the San Juan Charter.

The County filed an answer asserting a number of affirmative defenses. The County alleged that as a home rule charter county, it had the authority under article II, section 4 "to nominate and elect its county council members in at-large elections from the voting district - the entire county -- and provide that each council member shall be qualified for office by residency in one of three unequal size 'residency districts.' " The County asserted that the delay in seeking judicial review of the alleged failure to comply with the procedural requirements of former section 8.31(3) of the Charter was "barred by the doctrine of laches." The County also asserted Carlson failed to name necessary parties, failed to exhaust administrative remedies, and waiver.

---

[3] Section 8.31(3) of the Charter was amended in the November 2012 election.

The County filed a motion to dismiss for failure to name necessary parties. The court allowed Carlson to file an amended complaint naming the six current council members, Patty Miller, Richard Peterson, Jamie Stephens, Robert Jarman, Marc Forlenza, and Rick Hughes; and the candidates for election to the three new council member positions, Jaime Stephens, Robert Jarman, Marc Forlenza, Rick Hughes, Lisa Byers, Gregory Ayers, Lovel Pratt, and Brian McClerren.[4]

Carlson, the County, and the State filed cross motions for summary judgment. The court denied the County's motion to dismiss the procedural challenge to Proposition No. 1 under former article 8, section 8.31 as barred by the doctrine of laches. The court granted summary judgment dismissal of the complaint for declaratory and injunctive relief.

Carlson appealed. The County cross appealed denial of the motion to dismiss. The Supreme Court denied Carlson's motion for accelerated review and injunctive relief and transferred the appeal to this court.

ANALYSIS

Carlson contends Proposition No. 1 and the statutes that authorize residency districts of unequal population, RCW 36.32.020 and RCW 36.32.040(2), violate equal protection and substantive due process; and article I, section 12 and article I, section 19 of the Washington State Constitution. Carlson also contends the Proposition No. 1 ballot title violates article II, section 19, the subject-in-title rule; and that Proposition No. 1 does not comply with former section 8.31 of the San Juan Charter.

---

[4] Stephens and Pratt aligned with the County and the State. Peterson, Forlenza, and Ayers chose to participate as additional plaintiffs. Miller, Jarman, Hughes, Byers, and McClerren "expressed no preference for being aligned with Plaintiffs or Defendant[s]."

We review summary judgment de novo. Citizens for Responsible Wildlife Mgmt. v. State, 149 Wn.2d 622, 630, 71 P.3d 644 (2003). Constitutional challenges are questions of law that we review de novo. Amunrud v. Bd. of Appeals, 158 Wn.2d 208, 215, 143 P.3d 571 (2006). We presume a statute is constitutional, and the challenging party "bears the burden of establishing a statute's unconstitutionality beyond a reasonable doubt." Eugster v. State, 171 Wn.2d 839, 843, 259 P.3d 146 (2011).

Proposition No. 1 amended the Charter to reduce the number of county council members from six to three members, each residing in a separate unequal size district and nominated and elected in an at-large countywide election.

The San Juan County "Voters' Pamphlet" set forth Proposition No. 1 as follows:

Proposition No. 1

San Juan County

Concerns charter amendments to reduce the number of County Council members from 6 to 3

The San Juan County Charter Review Commission has proposed charter amendments to reduce the number of Council members. This measure would reduce the County Council from six (6) members nominated and elected by district to three (3) members, each residing in a separate district but nominated and elected by the entire County. This measure also includes technical revisions and clarifications to the charter and a transition plan that provides for implementation at special elections in April 2013.

Should this proposal be:

[ ] Approved
[ ] Rejected.

The "Explanatory Statement" in the Voters' Pamphlet stated, in pertinent part:

The County Council is the legislative authority of the County. If adopted, this proposal will reduce the size of the County Council from 6 members to

8

3 members and change voting provisions to be consistent with this number.

This proposal also changes the process for nominating and electing Council members. Under the current charter, Council members are qualified by residing in a district and each is nominated and elected by the voters within the district. As proposed, each Council member will be nominated in a primary election by voters of the entire County and then elected by voters of the entire County. As proposed, Council members are qualified by residing in one of three districts, called "residency districts." The three residency districts consist of the following ferry-served islands and also smaller islands nearby: 1) San Juan Island, 2) Orcas Island, and 3) Lopez/Shaw Islands.

The text of the San Juan Home Rule Charter amendments in the Voters'

Pamphlet for Proposition No. 1 shows the proposed changes by striking through the

then-current language of the Charter and underlining the proposed amendments. The

text of the Voters' Pamphlet stated, in pertinent part:

**Section 4.20 - Qualifications; Residency for County Council Member**
Each county officer holding an elective office shall be, at the time of appointment or filing a declaration of candidacy for election, at the time of election, . . . must ~~be residents of the County and registered voters of the district from which they are nominated~~ reside in the district to which he or she seeks or holds office at the time of appointment or filing a declaration of candidacy for election, at the time of election and at all times while holding office . . . .

**Section 4.30 - Legislative Body Residency Districts**
(1) The ~~six (6)~~ three (3) Legislative Residency Districts shall be designated as Residency District 1, Residency District 2, and Residency District 3 . . . .
(a) ~~The~~ Each Residency Districts [sic] shall consist of . . . whole Islands and nearly contiguous Islands as authorized by RCW 36.32.020.
(b) The ~~initial~~ Legislative Residency districts are established to include whole islands and the existing precincts . . . .
. . . .

. . . .

9

**Section 4.32 - Legislative Body - Nominations**

Qualified voters of ~~each district~~ the County shall nominate candidates for the Legislative Body. <u>Such candidates shall be nominated by countywide primary election for non-partisan office in the same manner as candidates for other County offices. (RCW 36.32.040)</u>.[5]

Chapter 36.32 RCW requires counties that have not adopted a home rule charter to establish a three-member board of commissioners. RCW 36.32.010. RCW 36.32.020 requires each county to create three commissioner districts with "as nearly as possible" one-third of the population, but expressly allows island counties with a population of less than 35,000 to establish commissioner residency districts without regard to population. RCW 36.32.020 states, in pertinent part:

> The board of county commissioners of each county shall divide their county into three commissioner districts so that each district shall comprise as nearly as possible one-third of the population of the county
>
> . . . .
>
> However, the commissioners of any county composed entirely of islands and with a population of less than thirty-five thousand may divide their county into three commissioner districts without regard to population, except that if any single island is included in more than one district, the districts on such island shall comprise, as nearly as possible, equal populations.

RCW 36.32.040(2) requires countywide nomination and election of commissioner candidates. RCW 36.32.040(2) states:

> Where the commissioners of a county composed entirely of islands with a population of less than thirty-five thousand have chosen to divide the county into unequal-sized commissioner districts pursuant to the exception provided in RCW 36.32.020, the qualified electors of the entire county shall nominate from among their own number who reside within a commissioner district, candidates for the office of county commissioner of such commissioner district to be voted for at the following general election. Such candidates shall be nominated in the same manner as candidates for other county offices are nominated in all other respects.

---

5 Boldface and some alterations in original.

The State and County contend the court should not address the constitutional challenges to RCW 36.32.020 and RCW 36.32.040(2) because as a home rule charter county under article XI, section 4, the County has the authority to adopt unequal size residency districts.

Article XI, section 4 gives a home rule charter county broad independent power to govern the election process. Article XI, section 4 (amendment 21) provides, in pertinent part:

> Any county may frame a "Home Rule" charter for its own government subject to the Constitution and laws of this state . . . .
> Any home rule charter proposed as herein provided, may provide for such county officers as may be deemed necessary to carry out and perform all county functions as provided by charter or by general law . . . .
> . . . .
> The terms of all elective officers . . . who are in office at the time of the adoption of a Home Rule Charter shall terminate as provided in the charter.

It is well established that a home rule charter county has "the right to conduct their purely local affairs without supervision by the state, so long as they abided by the provisions of the constitution and did not run counter to considerations of public policy of broad concern, expressed in general laws." State ex rel. Carroll v. King County, 78 Wn.2d 452, 457-58, 474 P.2d 877 (1970) (holding a home rule charter county could hold elections at a different time than specified by state statute). However, because the CRC and Proposition No. 1 explicitly cite and rely on the statutory authorization under RCW 36.32.020 and RCW 36.32.040, we address the constitutional challenges to the

No. 70710-8-I/12

statutes.[6]

<u>Equal Protection</u>

Carlson contends Proposition No. 1 and RCW 36.32.020 and RCW 36.32.040

violate the fundamental constitutional right to vote. Carlson argues the disproportionate

---

[6] The CRC findings expressly stated, in pertinent part:

**Finding 2. Countywide Elections:**

. . . .

8. <u>We are advised and therefore find that countywide elections meet all the statutory and Constitutional requirements for equal protection (see RCW 36.32.040 (2)</u> and memorandum from San Juan County Prosecuting Attorney Randall Gaylord, April 19, 2012).

. . . .

**Finding 3. County Council Residency Districts:**

Although the Commission finds that, while countywide elections are preferable as assuring countywide concern and representation by each council member, one consequence, if uncured, could be election of all three council members from the island with the largest population. Accordingly, <u>Council candidates are required to be nominated from separate residential districts, delineated in accordance with RCW 36.32.020 that accommodates the unique geographic nature of San Juan County and proved workable for over a hundred years prior to the Charter adoption.</u> The Prosecuting Attorney advises that under constitutional decision to date, the disparity of population between districts does not result in an unconstitutional allocation of either voting power or representation, as voting is countywide and every voter, regardless of district, has equal influence on the outcome of elections (again, see RCW 36.32.040 and memorandum from San Juan County Prosecuting Attorney Randall Gaylord, April 19, 2012).

(Emphasis added, boldface in original.)

The Proposition No. 1 amendments set forth in the Voters' Pamphlet stated, in pertinent part:

**Section 4.30 - Legislative Body <u>Residency</u> Districts**
  (1) The . . . three (3) Legislative <u>Residency</u> Districts shall be designated as <u>Residency</u> District 1, <u>Residency</u> District 2, and <u>Residency</u> District 3 . . . .
    (a) . . . Each <u>Residency</u> Districts [sic] shall consist of . . . whole Islands and nearly contiguous Islands <u>as authorized by RCW 36.32.020</u>.

. . . .

. . . .

. . . .

**Section 4.32 - Legislative Body - Nominations**
Qualified voters of . . . <u>the County</u> shall nominate candidates for the Legislative Body. <u>Such candidates shall be nominated by countywide primary election for non-partisan office in the same manner as candidates for other County offices. (RCW 36.32.040)</u>.

(Emphasis and boldface in original.)

12

residency districts dilute the fundamental constitutional right to vote. Carlson contends the creation of unequal residency districts violates equal protection and is subject to strict scrutiny.

Section 1 of the Fourteenth Amendment to the United States Constitution provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." The federal equal protection clause extends to the states and their subdivisions. Avery v. Midland County, 390 U.S. 474, 479, 88 S. Ct. 1114, 20 L. Ed. 2d 45 (1968). "The equal protection clause requires that all citizens be permitted to participate equally in the election process." Story v. Anderson, 93 Wn.2d 546, 549, 611 P.2d 764 (1980).

"[V]oting is of the most fundamental significance under our constitutional structure." Illinois Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 184, 99 S. Ct. 983, 59 L. Ed. 2d 230 (1979). However, the right to vote in any manner is not absolute. Munro v. Socialist Workers Party, 479 U.S. 189, 193, 107 S. Ct. 533, 93 L. Ed. 2d 499 (1986); see Carroll, 78 Wn.2d at 457-58. States play an active role in structuring and regulating their own elections. See Tashjian v. Republican Party of Conn., 479 U.S. 208, 217, 107 S. Ct. 544, 93 L. Ed. 2d 514 (1986); Storer v Brown, 415 U.S. 724, 730, 94 S. Ct. 1274, 39 L. Ed. 2d 714 (1974).

Election laws invariably impose some burden upon individual voters. Anderson v Celebrezze, 460 U.S. 780, 788, 103 S. Ct. 1564, 75 L. Ed. 2d 547 (1983). Regulations govern the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affecting, at least to some degree, the right to vote. Anderson, 460 U.S. at 788. Therefore, subjecting all voting regulations to

strict scrutiny and requiring that the regulations be narrowly tailored to advance a compelling state interest may interfere with the state's ability to regulate their own elections. See Anderson, 460 U.S. at 788; Storer, 415 U.S. at 730. Although "laws that affect candidates always have at least some theoretical, correlative effect on voters . . . , not every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review." Bullock v. Carter, 405 U.S. 134, 143, 92 S. Ct. 849, 31 L. Ed. 2d 92 (1972). In considering an equal protection challenge to an election law, the court must determine the extent a challenged regulation directly infringes on Fourteenth Amendment rights. Anderson, 460 U.S. at 789; Tashjian, 479 U.S. at 213-14.

Absent evidence that an election plan dilutes voting strength of an identifiable group or results in invidious discrimination, the United States Supreme Court has consistently rejected equal protection challenges and upheld unequal residency districts where the candidates are nominated and elected in an at-large election.

In Fortson v. Dorsey, 379 U.S. 433, 85 S. Ct. 498, 13 L. Ed. 401 (1965), voters challenged a Georgia statute that allowed for the creation of some candidate residency districts but required countywide election of state senators. Fortson, 379 U.S. at 434-35. Voters from multimember districts argued their votes were not equal in weight to voters in single-member constituencies. Fortson, 379 U.S. at 435-36. The Court rejected the equal protection challenge. The Court held that "[t]he statute uses districts in multi-district counties merely as the basis of residence for candidates, not for voting or representation." Fortson, 379 U.S. at 438.

> It is not accurate to treat a senator from a multi-district county as the representative of only that district within the county wherein he resides. . . . [S]ince his tenure depends upon the county-wide electorate he must be vigilant to serve the interests of all the people in the county,

and not merely those of people in his home district; thus in fact he is the county's and not merely the district's senator.

Fortson, 379 U.S. at 438.

In Dusch v. Davis, 387 U.S. 112, 87 S. Ct. 1554, 18 L. Ed. 2d 656 (1967), voters challenged a city charter provision that called for at-large elections but imposed a residency requirement for 7 of the 11 city council positions. Dusch, 387 U.S. at 114. The largest of the seven residency districts had a population of 29,048 and the smallest just 733. Dusch, 387 U.S. at 117 n.5. The Court followed the reasoning in Fortson and upheld the residency requirements, holding a council member elected at large must serve the interests of the entire electorate, not merely his or her residency district. Dusch, 387 U.S. at 115-16.

In Dallas County v. Reese, 421 U.S. 477, 95 S. Ct. 1706, 44 L. Ed. 2d 312 (1975), the Court upheld an election system that provided for at-large elections of county commissioners but required a member be elected from each of four unequal residency districts. Dallas County, 421 U.S. at 477-78, 479. Citing Fortson and Dusch, the Court reiterated the "basic teaching that elected officials represent all of those who elect them, and not merely those who are their neighbors." Dallas County, 421 U.S. at 480. The Court determined that to establish the unconstitutionality of such an election plan, the challenge must be "based on findings in a particular case that a plan in fact operates impermissibly to dilute the voting strength of an identifiable element of the voting population." Dallas County, 421 U.S. at 480.

Carlson does not attempt to distinguish these controlling Supreme Court cases. Nor does Carlson present any evidence that Proposition No. 1 or RCW 36.32.020 and

15

RCW 36.32.040 impermissibly diluted the voter strength of an identifiable element of the voting population or resulted in discrimination.

Instead, Carlson asserts that the unequal populations of the residency districts dilutes the rights of the voters by greatly increasing the likelihood that a resident of the smaller Lopez/Shaw district would serve on the council. But the direct impact of the residency requirements is on an individual's right to be a candidate, not on the right to vote. Carlson also relies heavily on Story as "the most analogous case to the present matter." Story does not support the argument that the disproportionate residency districts violate equal protection.

In Story, our Supreme Court followed the decision in Reynolds v. Sims, 377 U.S. 533, 84 S. Ct. 1362, 12 L. Ed.2d 506 (1964), in holding that a primary election system where commissioners were nominated from unequal island-based residency districts resulted in impermissible "voting strength" in the primary election. Story, 93 Wn.2d at 547-49. In Reynolds, the Court established the principle of "one person, one vote," requiring that state voting districts must have "substantial equality of population" and must not dilute voting rights of a racial or political minority. Reynolds, 377 U.S. at 578-79. In distinguishing the Supreme Court decisions in Dusch and Dallas County, the Court in Story emphasized that "[i]t is this primary election system and not the residency requirement, which causes unequal representation under the Island County scheme." Story, 93 Wn.2d at 552-53.

> In Dusch and Dallas County, as in the present case, the election schemes imposed a residency requirement, and specified that each of the elected county officers must live in a different district of the county. The court held in these cases that such a scheme was not unconstitutional because the districts were used "merely as the basis of residence for candidates, not for voting or representation." Dusch,[ 387 U.S.] at 115; Dallas County,[

16

421 U.S.] at 479-80. However, the Island County election scheme differs from the <u>Dusch</u> and <u>Dallas County</u> schemes in that it establishes a <u>primary</u> election system in which the districts <u>are</u> used for voting. It is this primary election system and not the residency requirement, which causes unequal representation under the Island County scheme. The single-district primary system combines with the inequality of population among the districts to confer a disproportionate voting strength on the residents of district three.

<u>Story</u>, 93 Wn.2d at 552-53.[7]

Here, as in <u>Dusch</u> and <u>Dallas County</u>, we reject the equal protection challenge to the approval of Proposition No. 1 by the voters in 2012 and the residency districts authorized by RCW 36.32.020 and RCW 36.32.040. Neither Proposition No. 1 nor the statutes violate equal protection.[8]

<u>Article I, Section 12</u>

Carlson claims Proposition No. 1 and RCW 36.32.020 and RCW 36.32.040 violate the privileges and immunities clause of article 1, section 12 of the Washington State Constitution. The privileges and immunities clause of the Washington State Constitution is more protective of the right to vote than the Fourteenth Amendment equal protection clause of the United States Constitution. <u>Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake</u>, 150 Wn.2d 791, 811, 83 P.3d 419 (2004).

---

[7] (Emphasis in original, internal quotation marks omitted.) The other apportionment cases Carlson cites address the "one person, one vote" principal under <u>Reynolds</u> and are inapposite. <u>See</u> <u>Lucas v. Forty-Fourth General Assembly</u>, 377 U.S. 713, 84 S. Ct. 1459, 12 L. Ed. 2d 632 (1964); <u>WMCA, Inc. v. Lomenzo</u>, 377 U.S. 633, 84 S. Ct. 1418, 12 L. Ed. 2d 568 (1964).

[8] In 1990, the Office of the Attorney General issued a formal attorney general opinion (AGO) addressing the constitutionality of the County's then-current commissioner election system as authorized by RCW 36.32.020 and RCW 36.32.040(2). 1990 Op. Att'y Gen. No. 6. Although not binding, a formal AGO is persuasive and " 'entitled to great weight.' " <u>Five Corners Family Farmers v. State</u>, 173 Wn.2d 296, 308, 268 P.3d 892 (2011) (quoting <u>Seattle Bldg. & Constr. Trades Council v. Apprenticeship & Training Council</u>, 129 Wn.2d 787, 803, 920 P.2d 581 (1996)). Citing <u>Fortson</u>, <u>Dusch</u>, <u>Dallas County</u>, and <u>Story</u>, the AGO concluded the statutes that allowed residency districts of unequal population and at-large primary and general elections were constitutional under both the federal and state constitutions. 1990 Op. Att'y Gen. No. 6, at 9.

Article I, section 12 provides:

No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations.

"For a violation of article I, section 12 to occur, the law, or its application, must confer a privilege to a class of citizens." Grant County, 150 Wn.2d at 812. The right to vote is a privilege implicating article I, section 12. Madison v. State, 161 Wn.2d 85, 95, 163 P.3d 757 (2007). But because residency districts do not infringe on the right to vote or the right to participate in an election, article I, section 12 is not implicated. All County residents have an equal right to nominate and elect council members, and all eligible residents may seek office.[9]

Article I, Section 19

Carlson claims Proposition No. 1 and the statutes violate article I, section 19 of the state constitution. Article 1, section 19 provides, "All Elections shall be free and equal, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage."

The Washington Supreme Court has "historically interpreted article I, section 19 as prohibiting the complete denial of the right to vote to a group of affected citizens." Eugster, 171 Wn.2d at 845. Because Proposition No. 1 does not deny the right to vote in council elections, article I, section 19 is not implicated.

Carlson's reliance on Foster v. Sunnyside Valley Irrigation District, 102 Wn.2d 395, 687 P.2d 841 (1984), is misplaced. In Foster, the owners of subdivided land were

---

[9] Carlson also contends that because other counties are required to have "voting districts be as equally sized as possible," the residents of San Juan County do not enjoy the same privileges and immunities enjoyed by residents of other counties. But here, San Juan County comprises a single voting district.

18

completely denied the right to vote in irrigation board elections even through their lands were subject to assessments for irrigation water. Foster, 102 Wn.2d at 398. The court held the landowners could not be excluded entirely from board elections under article 1, section 19; and giving residents who bore a greater burden of the district's assessments more voting power would be consistent with article I, section 19. Foster, 102 Wn.2d at 410-11.[10]

Substantive Due Process

Carlson asserts the unequal residency districts established in Proposition No. 1 and authorized by RCW 36.32.020 and RCW 36.32.040 do not serve a legitimate public purpose. Substantive due process protects against arbitrary and capricious government action. Amunrud, 158 Wn.2d at 218-19. Article I, section 3 of the state constitution and the Fourteenth Amendment of the federal constitution prohibiting the State from denying due process of law provide equivalent due process protections. Amunrud, 158 Wn.2d at 216 n.2. Therefore, the analysis under the state and federal constitutions is the same. Hardee v. Dep't of Soc. & Health Servs., 172 Wn.2d 1, 7 n.7, 256 P.3d 339 (2011).

Nonetheless, Carlson asserts the three-part substantive due process analysis set forth in Presbytery of Seattle v. King County, 114 Wn.2d 320, 787 P.2d 907 (1990), applies. But in Amunrud, the Washington Supreme Court notes that this test applies only in the land use context, and even there its applicability is limited. Amunrud, 158 Wn.2d at 226, 226 n.5.

---

[10] Carlson also contends article II, section 43, amendment 74 calls into question the constitutionality of RCW 36.32.020 and RCW 36.32.040(2). But article II, section 43, amendment 74 governs redistricting of state and congressional voting districts, not residency districts.

When considering a constitutional challenge to an election regulation, a court will apply a "flexible standard," recognizing the need of state and local governments "to assure that elections are operated equitably and efficiently." Burdick v. Takushi, 504 U.S. 428, 433-34, 112 S. Ct. 2059, 119 L. Ed. 2d 245 (1992). When the burdens imposed by the government are " 'severe,' " strict scrutiny applies, and the "regulation must be 'narrowly drawn to advance a state interest of compelling importance.' " Burdick, 504 U.S. at 434 (quoting Norman v. Reed, 502 U.S. 279, 289, 112 S. Ct. 698, 116 L. Ed. 2d 711 (1992)). "Where non-severe, '[l]esser burdens' on voting are at stake, we apply 'less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions.' " Dudum v. Arntz, 640 F.3d 1098, 1106 (9th Cir. 2011)[11] (quoting Timmons v. Twin Cities Area New Party, 520 U.S. 351, 358, 117 S. Ct. 1364, 137 L. Ed. 2d 589 (1997)); see e.g., Burdick, 504 U.S. 428 (applying this "less exacting review" to election law prohibiting write-in voting).

While Proposition No. 1 and the statutes authorizing residency districts of unequal size impose a residency requirement on candidates for the council, it does not interfere with the right to vote or prohibit eligible residents from seeking office. Under the "less exacting review," the legitimate interest in reducing costs, increasing the efficiency and transparency of the council, ensuring compliance with the Open Public Meetings Act, providing greater accountability, and ensuring geographic diversity on the council justifies the changes to the San Juan County Home Rule Charter in Proposition No. 1.

---

[11] Alteration in original.

Article II, Section 19

Carlson also asserts that the form of the ballot title of Proposition No. 1 violated article II, section 19, the single-subject and subject-in-title rule. Article II, section 19 does not apply to Proposition No. 1. By its express terms, article II, section 19 applies only to the state legislature. Article II, section 19 states, "No bill shall embrace more than one subject, and that shall be expressed in the title." See also City of Seattle v. Buchanan, 90 Wn.2d 584, 607, 584 P.2d 918 (1978) (article II, section 19 "applies only to the legislature").

Carlson's reliance on Washington Federation of State Employees v. State, 127 Wn.2d 544, 901 P.2d 1028 (1995), is misplaced. In Washington Federation, the court addressed whether statewide initiatives are subject to article II, section 19. Wash. Fed'n, 127 Wn.2d at 548.

San Juan Charter Former Section 8.31

Carlson also claims Proposition No. 1 violates former section 8.31(3) of the San Juan County Charter by proposing several unrelated amendments.

Former section 8.31(3) of the Charter stated:

> If more than one amendment is submitted on the same ballot, they shall be submitted in such a manner that people may vote for or against the amendments separately; provided, an amendment which embraces a single or inter-related subject may be submitted as a single proposition even though it is composed of changes to one or more Articles.

State on the Relation of Lowman & Hanford Stationary & Printing Co. v. Riplinger, 30 Wash. 281, 70 P. 748 (1902), is analogous. In Riplinger, the city charter provision provided that " 'if more than one amendment be submitted at the same

21

general election the same shall be submitted at such election in such manner that each proposed amendment may be voted on separately without prejudice to the others.' "
Riplinger, 30 Wn. at 285-86.

In Riplinger, the Washington State Supreme Court held that an amendment relating to "the library department" that encompassed changes to seven separate sections of the city charter did not violate the charter's separate amendment rule because all of the changes related to the amendment's main purpose of restructuring the way the library was controlled and managed and how it paid its expenses.
Riplinger, 30 Wash. at 282, 286.

> It appears evident from the language of the amendment that it was the intention that the new provision, as a whole, should be substituted in lieu of the old provision, as a whole. That being so, the voter was not deprived of the right to exercise his choice in voting upon the amendment.

Riplinger, 30 Wash. at 286.

Former section 8.31(3) is similar to article XXIII, section 1 of the Washington Constitution. Article XXIII, section 1 states that "[i]f more than one amendment be submitted, they shall be submitted in such a manner that the people may vote for or against such amendments separately." To constitute multiple amendments within the meaning of article XXIII, section 1, " 'the propositions submitted must relate to more than one subject, and have at least two distinct and separate purposes not dependent upon or connected with each other.' " Farris v. Munro, 99 Wn.2d 326, 331, 662 P.2d 821 (1983) (quoting Gottstein v. Lister, 88 Wash. 462, 470, 153 P. 595 (1915)). Where an amendment contains multiple proposed changes but all are incidental to the main object or purpose of the measure, there is no violation of the separate amendment rule. Gottstein, 88 Wash. at 479.

Proposition No. 1 did not violate former section 8.31(3) of San Juan Charter. Proposition No. 1 addressed the interrelated subject of reducing the number and election of council members.[12]

We affirm summary judgment dismissal of the lawsuit.

WE CONCUR:

---

[12] Accordingly, we need not address the County's cross appeal.